**COMPUTER ASSOCIATES INTERNATIONAL, INC., Plaintiff,**

v.

**AMERICAN FUNDWARE, INC., et al., Defendants.**

No. 86–C–2562.

United States District Court, D. Colorado.

Dec. 6, 1990.

---

Stephen D. Kahn, New York City, Jane Michaels, Steven C. Chocquette, Denver, Colo., for plaintiff.

Douglas E. Bragg, Denver, Colo., Peter Vogel, Dallas, Tex., Karl J. Dakin, Englewood, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Computer Associates International, Inc. ("CA"), a Delaware corporation with its principal place of business in New York, commenced this action asserting claims and seeking damages for breach of contract (First Claim), unfair competition (Fourth Claim) and copyright infringement (Fifth Claim). As additional remedies, CA seeks preliminary and permanent injunctions (Second Claim) and punitive damages (Third Claim). Defendant American Fundware, Inc. ("AF") is a Colorado corporation with its principal place of business in Colorado. Defendant Yeager, a Colorado citizen, is AF's president. Defendant Dayton, also a Colorado citizen, is AF's vice-president. Defendants will be referred to collectively as "AF."

Asserting that AF destroyed critical evidence, CA has moved for a default judgment as a sanction pursuant to Fed.R. Civ.P. 37(b). Magistrate Hilbert Schauer reviewed the matter and prepared a recommendation pursuant to this court's Local Rule 603 that a sanction short of default be ordered. CA has objected to the Magistrate's recommendation, renewing its request for default judgment as a sanction against all three defendants.

The parties have fully briefed the issues, and a hearing has been held. Jurisdiction is founded on 28 U.S.C. §§ 1332 and 1338(a).

In the 1970's, CA's predecessor developed and marketed a series of proprietary computer accounting programs. On May 25, 1979, CA's predecessor entered into a Computer Software Agreement (the "agreement") with AF's predecessor. The agreement provided that AF's predecessor could use and distribute certain of CA's predecessor's programs subject to specified conditions. CA and AF are successors to the rights and responsibilities of their respective predecessor companies under the agreement.

AF currently is marketing a series of accounting programs called PC–Fund. By supplemental complaint, CA alleges that PC–Fund is a reproduction of its software and therefore violates the agreement. CA further alleges that, in violation of CA's copyright, AF copied the structure, sequence, organization and other features of CA's programs.

In October 1986, CA informed AF of its concern that AF had violated the agreement. In an effort to allay CA's suspicions, AF gave CA a portion of PC–Fund's source code.[1] This effort, however, produced a result opposite to that intended, for CA concluded that AF indeed had copied its software and thereby had violated the agreement.

On December 4, 1986, the parties met in an unsuccessful attempt to resolve their dispute. At that meeting, CA informed AF that it believed PC–Fund had been copied from CA's programs. On December 19, 1986, CA filed this action, and on December 23, 1986, AF was served.

Prior to December 1986, AF at any one time had retained only the then current version of PC–Fund's source code. Under that procedure, as the program was revised, previous versions were destroyed. AF continued this practice until September 1987, long after commencement of this lawsuit. The record indicates that such a practice is commonly followed in the industry, for legitimate reasons, and is not inherently wrongful. However, it is not the general propriety of the practice that is at issue. Rather CA contends that once AF knew, or should have known, that the source code probably would be critical evidence in pending or imminent litigation, a duty arose to preserve it. If AF breached that duty, contends CA, the most serious sanction would be appropriate.

■ This court has the inherent authority to enter sanctions for discovery abuses. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980). If the abuses are egregious, default judgment is appropriate. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976). This inherent power has been reinforced by Fed.R.Civ.P. 37(b)(2). In pertinent part, that rule reads:

"If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: ... (C) An order striking out pleadings or parts thereof ... or rendering a judgment by default against the disobedient party."

Other courts have exercised this power to enter default judgments as punishment for a defendant's destruction of documents. *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F.Supp. 1443, 1455–56 (C.D.Cal.1984); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107 (S.D.Fla. 1987). Therefore, I must determine whether AF breached any obligation, and if so, what sanction, if any, is appropriate.

■ The threshold question is when AF's duty to preserve the source code arose. AF asserts that the duty did not arise until the Magistrate ordered it to produce the code on September 11, 1987.

---

1. Source code is the form of computer program written in a language that suitably trained programmers can read and understand.

However, pre-litigation discussions between the parties had made clear that the central issue in this dispute would be PC–Fund's source code and especially whether it had been copied from CA's product. Even if those discussions had not occurred, notice from CA's complaint filed December 19, 1986, and its later supplemental complaint, surely eliminated any lingering doubt regarding the crucial importance of the source code as evidence.

On April 3, 1987, CA served on AF a production request seeking PC–Fund's source code. On May 21, 1987, CA filed a motion to compel discovery of PC–Fund's source code. In spite of clear notice from these pending discovery efforts, AF continued to destroy older versions of the PC–Fund code until September 1987. As stated in *Wm. T. Thompson, Co.*:

> "Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissable evidence, and destroys such documents and information. While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissable evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." 593 F.Supp. at 1455.

All reasonable inferences lead inexorably to the conclusion that AF must have been aware that PC–Fund's source code would be the subject of a discovery request long before it stopped destroying older versions, and I so find. It is inconceivable that after the October 1986 meeting, AF did not realize that the software in its possession would be sought through discovery. Certainly commencement of the action settled any doubts. Thereafter the request for production, followed by the motion to compel, provided repeated, insistent reminders of the duty to preserve this irreplaceable evidence. Yet the destruction proceeded.

Therefore, I find and conclude that AF was subject to a duty to preserve the source code no later January 13, 1987, *i.e.*, twenty days after December 23, 1986, when it was served with the complaint, because, in the normal course of proceedings, it had a duty by then to investigate the matter and file an answer, or otherwise respond, to the complaint. Even assuming that maintenance of only a single, updated version of the source code was, in other circumstances, a bona fide business practice, any destruction of versions of the code after January 13, 1987, could not be excused as a bona fide business practice. That date gives AF the benefit of every doubt.

Further, I find and conclude that AF intentionally destroyed portions of the source code not only after being served in this action and thus put on notice that the source code was irreplaceable evidence, but even after the request for production and motion to compel had dramatically and specifically emphasized the significance of the code versions being destroyed as evidence.

■ The only remaining question is what sanction should be imposed against AF for thus willfully violating its discovery obligations. Sanctions serve a dual function. Their purpose is "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League*, 427 U.S. at 643, 96 S.Ct. at 2781.

■ One of the most severe sanctions available is default judgment. It is reserved for egregious offenses against an opposing party or a court. Therefore I have considered default judgment as a last resort to be invoked only if no lesser, yet equally effective, sanction is available. Employing default as a sanction requires findings: (1) that AF acted willfully or in bad faith; (2) that CA was seriously prejudiced by AF's actions; and (3) that alternative sanctions would not adequately punish AF and deter future discovery violations.

*See Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107 (S.D.Fla.1987).

As stated, I have found that AF intentionally destroyed evidence after the obligation to preserve it arose and after AF had clear notice of that obligation. Therefore, I find and conclude that AF acted willfully.

Obviously CA was seriously prejudiced by AF's actions. Comparing PC–Fund's source code to CA's was the only way to prove CA's claim that AF had copied its product. However, that comparison has been rendered all but impossible because AF intentionally destroyed the relevant version. Destroying the best evidence relating to the core issue in the case inflicts the ultimate prejudice upon the opposing party.

I find and conclude that no alternative sanction short of a default judgment would adequately punish AF and deter future like-minded litigants. Any lesser sanction would allow a party possessing evidence that would insure an adverse result to destroy that evidence with impunity, thus assuring defeat for the opponent while risking only a comparatively mild rebuke. One who anticipates that compliance with discovery rules, and the resulting production of damning evidence, will produce an adverse judgment, will not likely be deterred from destroying that decisive evidence by any sanction less than the adverse judgment he (or she) is tempted to thus evade. It follows that the only sanction adequate and appropriate to punish AF and deter future similarly situated litigants is default judgment on liability.

▇ At oral argument, AF's counsel asserted that default judgment is inappropriate because CA's complaint is without merit. That argument, of course, begs the question, for AF's misconduct has precluded the court from determining whether CA's complaint has merit or not. Most probably AF would have been meticulously careful to preserve evidence that could have demonstrated lack of merit in CA's case. It is familiar doctrine that if a party fails to produce from within its control evidence that is relevant and material, the fair inference is that that evidence would have weighed against the party who held it back. *See Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 350–351, 29 S.Ct. 370, 379–380, 53 L.Ed. 530 (1909); *Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370, 1374–1375 (10th Cir.1978). *A fortiori*, where a party destroys evidence after being put on notice that it is important to a lawsuit, and being placed under a legal obligation to preserve and produce it, the compelling inference is that the evidence would have supported the opposing party's case. *Id.* (both cites).

In this post Iran-gate era of widely publicized evidence destruction by document shredding, it is well to remind litigants that such conduct will not be tolerated in judicial proceedings. Destruction of evidence cannot be countenanced in a justice system whose goal is to find the truth through honest and orderly production of evidence under established discovery rules. I hold that nothing less than default judgment on the issue of liability will suffice to both punish this defendant and deter others similarly tempted.

Accordingly, IT IS ORDERED that:

(1) The Magistrate's recommendation is not adopted as the order of this court;

(2) CA's objection to the Magistrate's recommendation is sustained;

(3) CA's motion to strike the defendants' answer is granted to the extent of striking liability defenses and granting CA judgment by default as to liability against American Fundware, Inc., Richard E. Yeager and Jerome C. Dayton;

(4) CA's motion for entry of default judgment on the issue of liability against all defendants is granted, and the clerk of this court shall enter judgment as to liability in favor of the plaintiff and against the defendants accordingly;

(5) The parties and their counsel are ordered to confer within eleven days of this order in a good faith attempt to settle all remaining issues in this case, including the amount of the plaintiff's damages and the terms of any injunc-

tive relief that is appropriate. Further, the parties are ordered to report to this court in writing, within eleven days after their meeting, stating the results of their settlement negotiations. If any issue remains unsettled, either party may move for an expedited hearing.