John E. **BACHMEIER**, and Mildred Bachmeier, the Surviving Father and Mother of Steven Michael Bachmeier, Decedent, and the Estate of Steven Michael Bachmeier, Deceased, Plaintiffs and Appellants

v.

**WALLWORK TRUCK CENTERS,** Defendant

and

**Kenworth Truck Company, a Division of Paccar, Inc., Defendant and Appellee.**

Civ. No. 930077.

Supreme Court of North Dakota.

Oct. 26, 1993.

Michael Ward (argued), Eaton, Van de Streek & Ward, Minot, for plaintiffs and appellants.

Christine A. Hogan (argued), Pearce & Durick, Bismarck, for defendant and appellee.

NEUMANN, Justice.

John E. Bachmeier et al. (Bachmeier) appeal from the Order granting summary judgment, and Judgment for costs entered by the District Court for Ward County, Northwest Judicial District. We reverse and remand.

This appeal comes to us from the granting of PACCAR Inc.'s (PACCAR) motion for summary judgment. The relevant facts are not in dispute. Bachmeier brought this action claiming strict product liability, negligence, and breach of warranty against PACCAR after their son, Steven Bachmeier, died in an accident while riding as a passenger in a 1979 Kenworth truck manufactured by PACCAR. The likely cause of the accident was the breaking of the truck's right front hub. On October 22, 1985, while traveling down the Ohio Turnpike, the right front hub of the truck broke, the truck left the roadway and overturned, resulting in injuries which caused Steven's death.

Prior to the bringing of this product liability action against PACCAR, Bachmeier brought a wrongful death action against the owner of the truck. The owner's insurer, Great West Casualty Company (Great West), hired a metallurgical engineer, Dr. Carl Loper (Loper), to examine the hub. In the course of this examination, Loper took a series of photographs of the fractured hub and prepared a series of three preliminary reports. In his first report, Loper concluded that the fracture of the hub was a fatigue fracture that resulted from excessive stresses to the hub as a result of bearing damage. He found no design or manufacturing problems. In his third report, Loper concluded that the bearing damage he observed resulted from insufficient lubrication. The wrongful death action against the owner of the truck was settled out of court. On August 14, 1986, in exchange for $60,000.00, Bachmeier signed a Pierringer Release[1] of their claim against the owner of the truck. One day later, on August 15, 1986, Great West wrote to Loper telling him that the case had settled and he could dispose of the parts in his possession. Loper then disposed of the hub within three days.

The products liability suit against PACCAR was commenced on October 15, 1987. The products liability claim is based upon a design defect theory. Bachmeier has retained an engineering and design expert, G.A. Tomlinson (Tomlinson), and has also retained Loper as a consultant. PACCAR's defenses to this suit include the contention that it was lack of maintenance and lubrication which caused the hub to fracture, and not faulty design.

On February 18, 1992, PACCAR filed a Motion for Summary Judgment of Dismissal. This motion was based on two legal theories. The first theory argued that without the destroyed hub, Bachmeier was unable to prove the defect theory of the claim. The second theory was that Bachmeier's failure to preserve the hub resulted in unreasonable prejudice to PACCAR due to PACCAR's deprivation of the opportunity to examine the hub and establish and prove its theory of defense. In an order dated September 2, 1992, the trial court denied PACCAR's motion for summary judgment. The trial court

---

1. The nature of a Pierringer Release is that it releases only the parties specifically named. The release stated that it would

"expressly reserve any and all other claims, action, causes of action, rights and demands of whatever kind or nature not hereby released which they or either of them may have against any and all other persons, partnerships, associations, corporations, or other legal entities not hereinbefore named or released arising out of said accident or for injuries or damages resulting therefrom, it being intended and understood that this release shall not release or discharge any other persons, partnerships, associations, corporations or other legal entities except those hereinbefore named and released...."

found that because there was some evidence of PACCAR's liability, summary judgment was not appropriate at that time. Acknowledging the potential for prejudice due to the destruction of the hub, the trial court decided that the existence or extent of this prejudice would be best determined after the commencement of trial. In addition, the trial judge reserved the right to either reconsider his decision or reconsider further motions regarding this matter. Thereafter, on January 15, 1993, on its own motion, the trial court reexamined and reconsidered PACCAR's motion for summary judgment. Upon reconsideration, the trial court set aside the Order dated September 2, 1992, and granted PACCAR's motion for summary judgment. The trial court's rationale was that without the hub, PACCAR would be deprived of the defense of lack of lubrication.[2] Bachmeier appeals from this Order granting summary judgment, and Judgment awarding costs. We reverse and remand.

In order to clearly analyze the issues on appeal, we find it helpful to clarify which legal theories do not apply to this analysis. Contrary to some of the contentions of the parties, upon reading the order granting summary judgment, it is evident that the trial court's order was not based on Rule 37 nor on Rule 56 of the North Dakota Rules of Civil Procedure.

## RULE 37

█ Bachmeier argues that the trial court's order granting summary judgment was a Rule 37 sanction. We disagree. Rule 37 addresses sanctions for failure to make discovery, and provides for sanctions for those who do not cooperate with discovery. See James L. Underwood, *A Guide to Federal Discovery Rules*, 59–63 (1979 & Supp. 1983); Rule 37, N.D.R.Civ.P. Bachmeier

does not fit into this category. There was no order issued or violated, nor does there appear to have been a refusal to respond to discovery requests. The parties simply learned that the prior defendant's expert had destroyed the hub. Specifically, Rule 37(d)(3) addresses discovery sanctions when a party fails to respond to requests for inspection under Rule 34 of the North Dakota Rules of Civil Procedure. Rule 34(a) states the scope of Rule 34.

"*(a) Scope.* Any party may serve on any other party a request

(1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect and copy any designated documents ..., or to inspect and copy, test, or sample any tangible things that constitute or contain matters within the scope of Rule 26(b) *and which are in the possession, custody or control of the party upon whom the request is served....*"

Rule 34(a), N.D.R.Civ.P. (emphasis added). A large number of the cases cited as authority in both Bachmeier's and PACCAR's briefs are Rule 37 sanction cases for failure to make discovery. Although some of these cases are helpful to the extent they address problems which frequently arise when evidence has been lost or destroyed, they are not directly on point. This case is distinguishable from these Rule 37 cases in that Bachmeier never had possession, custody, or control of the hub. In addition, the insurance company which did have control of the hub is not a party in interest in the present case. This is not a case where a party transferred possession of a needed item to a nonparty in an attempt to frustrate discovery. Although there may be situations where a party may be required to obtain an

---

2. The record from the trial court shows that a Memorandum Opinion Imposing Sanctions dated August 18, 1992, was filed with the trial court on February 19, 1993, nearly a month after the trial court had granted a summary judgment of dismissal. This memorandum opinion purported to impose the sanction of barring Bachmeier from presenting any evidence concerning the condition of the destroyed hub. The record does not indicate whether this order was ever mailed or otherwise conveyed to counsel prior to dismissal of the action. We therefore do not know

if the trial judge intended it to act as a prior ruling on the matter, which might still stand after our reversal of the dismissal. In light of the ambiguity of the trial court's intention regarding the Memorandum Opinion Imposing Sanctions; and in light of our direction in this opinion to weigh the detriment to PACCAR, the culpability of Bachmeier, and the efficacy of lesser sanctions; we treat the trial court's August 18, 1992, Memorandum Opinion Imposing Sanctions as having no effect, due to its lack of dissemination and its belated filing.

item from a nonparty, we are not convinced that this is such a case. Although Bachmeier could have requested the hub from Great West, this in and of itself did not give him a right to possession of the hub. The hub remained in the truck owner's control. The appropriate method for discovery of items in nonparty possession is by a subpoena duces tecum. Rule 45, N.D.R.Civ.P.

■ There are two primary reasons, then, that the order granting summary judgment could not have been invoked under the power of Rule 37. First, there was never a discovery order issued or violated, and the record reflects no failure to respond to a discovery request. Second, any Rule 34 request for Bachmeier to produce the hub for discovery purposes would have been inapplicable, because Bachmeier never had possession, custody, or control of the hub. It follows that the imposition of a Rule 37 order compelling discovery and a subsequent imposition of sanctions would have been invalid. For these reasons we find the trial court's authority to grant summary judgment did not flow from Rule 37. *See Unigard Sec. Ins. v. Lakewood Engineering & Mfg.*, 982 F.2d 363 (9th Cir.1992).

## RULE 56

■ One of PACCAR's arguments is that the trial court's order granting summary judgment was based on Rule 56 of the North Dakota Rules of Civil Procedure. We disagree with this contention.

"Summary judgment is a procedural device which can be used to promptly and expeditiously dispose of a controversy without a trial, if there is no dispute as to any material issues of fact or inferences which may be drawn from undisputed facts, or when only a question of law is involved."

*United Elec. Service & Supply, Inc. v. Powers*, 464 N.W.2d 818, 819 (N.D.1991). The trial court's order granting summary judgment was not based upon this traditional application of Rule 56. The order granting PACCAR's motion for summary judgment does not address whether there were material facts in dispute or differing inferences to be drawn. In fact, the trial court's initial response to the motion was to deny it on the grounds that some evidence existed as to PACCAR's liability. The order granting summary judgment does not appear to be based upon a reversal of the initial finding of evidence of liability, but instead focuses on a finding of prejudice to PACCAR. It is not founded on the traditional grounds that the moving party was entitled to judgment as a matter of substantive law.

The parties' briefs discuss and cite cases in which the court dismissed the action immediately after the exclusion of some evidence which was necessary for the party to establish a prima facie case. *E.g., American Family Insur. Co. et al. v. Village Pontiac–GMC, Inc. et al.*, 223 Ill.App.3d 624, 166 Ill.Dec. 93, 585 N.E.2d 1115 (2d Dist.1992) (granted motion to bar evidence, then granted summary judgment motion); *Fire Ins. Exchange v. Zenith Radio Corp.*, 103 Nev. 648, 747 P.2d 911 (1987) (excluded expert testimony pursuant to Rule 37, then granted motion for summary judgment). In these cases the summary judgment was usually preceded by a separate motion requesting preclusion of evidence concerning the alleged product defect. In such Rule 56 summary judgment motions, it is necessary for courts to determine whether there are genuine issues as to material facts. Here the trial court made the initial finding that summary judgment was not appropriate due to the existence of genuine issues as to material facts, and the subsequent order granting summary judgment in no way addressed or reversed this finding. The trial court's order granting summary judgment, therefore, could not have been based on the normal application of Rule 56.

## INHERENT POWER

■ The trial court's granting of PACCAR's motion for summary judgment can only be understood as the exercise of its inherent power to sanction. Sanctions may be appropriate when evidence relevant to the lawsuit is destroyed. *E.g., Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362 (D.Mass. 1991). The trial court's rationale for granting summary judgment is evidenced in the order. The Order states:

"Without the equipment needed, the Defendants are denied 'a day in court' and the right to raise vital issues and defenses. The fact that the Plaintiffs may also be prejudiced by the destruction of this chattel does not cancel the spectre of prejudice to the Defendants. It is noted that one of the issues raised in defense by the Defendants is the alleged lack of lubrication of the bearings. Without the hub the Defendants are deprived of this possibly vital defense. The Plaintiffs contend that the photographs and similar hubs are still available and would constitute probative evidence. However, I agree with the contention of the Defendants that the physical object is much more persuasive than an oral or photographic description."

Sanctions based on this inherent power will be overturned on appeal only upon a showing of abuse of discretion. *E.g., Dillon v. Nissan Motor Co., Ltd.,* 986 F.2d 263 (8th Cir.1993). *See Gohner v. Zundel,* 411 N.W.2d 75, 80 (N.D.1987) (court's inherent authority to dismiss counterclaim on its own initiative); *Vorachek v. Citizens State Bank of Lankin,* 421 N.W.2d 45 (N.D.1988) (Rule 37 sanctions). In Rule 37 sanctions we have found that dismissal of a claim should not be imposed if an alternative, less drastic, sanction is available and is equally effective. *E.g., Gohner,* 411 N.W.2d at 79. We believe the same rationale applies when the court exercises its inherent power, and therefore the trial court has a duty to impose the least restrictive sanction available under the circumstances. *Vorachek,* 421 N.W.2d at 50–51 (Rule 37 "[s]anctions must be tailored to the severity of the misconduct, and dismissal of an action or entry of default judgment should be used sparingly, only in extreme situations, and should not be used if an alternative, less drastic sanction is available and would be just as effective."). Dismissal of the entire case with prejudice is perhaps the most restrictive sanction which exists. Imposition of this sanction before the start of trial exacerbates this harshness. We prefer that disputes be settled on the merits. *St. Aubbin v. Nelson,* 329 N.W.2d 874, 876 (N.D.1983).

Generally, sanctions exist to further two goals. First, sanctions exist to penalize those whose conduct is deemed to warrant a sanction; second, they exist to deter others who may be tempted to behave in such a way as to warrant the imposition of a sanction. *See Vorachek,* 421 N.W.2d at 51 (Rule 37); *Computer Associates Int'l, Inc. v. American Fundware, Inc., et al.,* 133 F.R.D. 166, 169 (D.Colo.1990) (Rule 37). As applied in this case, any sanction imposed against Bachmeier has the additional goal of "evening the parties' playing field" in order to protect the integrity of the legal process. In this respect, as applied to this case, the trial court's inherent power to impose a sanction of summary judgment is distinguishable from a Rule 37 sanction of dismissal. A Rule 37 dismissal requires that the discovery abuse be deliberate or in bad faith. *Gohner,* 411 N.W.2d at 79. This is not a necessary requirement for dismissal based on the court's inherent power. The trial court found that the destruction of the hub was not malicious. We agree. At most, Bachmeier might have been negligent in not taking affirmative steps to preserve the hub, but we refrain from making this finding. If we agree with PACCAR's contention that destruction of the hub was spoliation of evidence, and a possible tort, it follows that Bachmeier might have had a reasonable expectation that Great West would preserve the hub for expected or potential litigation. *Miller v. Allstate Ins. Co.,* 573 So.2d 24 (Fla.Dist.Ct.App.1990), *rev. denied,* 581 So.2d 1307 (Fla.1991).

This case is distinguishable from all of the cases cited by the parties. As discussed above, this is neither a Rule 37 case nor a Rule 56 case, and is therefore clearly distinguishable from any of those cases cited by the parties. We also distinguish this case from the "inherent power" cases cited to by the parties in their briefs. First, this is not a case where the evidence was "willfully" destroyed. *Compare Graves v. Daley,* 172 Ill. App.3d 35, 122 Ill.Dec. 420, 422–23, 526 N.E.2d 679, 681–82 (1988) (distinguished willful destruction from innocent or negligent destruction). Second, Loper and Great West, the people who destroyed the evidence, were not parties to the second action, nor were they real parties in interest. *Compare State Farm Fire & Cas. Co. v. Frigidaire,* 146 F.R.D. 160 (N.D.Ill.1992). Finally, the

hub was not in Bachmeier's possession or control at the time of its destruction. *Compare Dillon v. Nissan Motor Co., Ltd.,* 986 F.2d 263 (8th Cir.1993) (retained witness and counsel destroyed evidence). *See also Dinello, et al. v. General Motors Corp., et al.,* 1993 WL 407864 (Conn.Super. Oct. 6, 1993) (summary judgment denied when defendant failed to show that the plaintiffs had either possession or control of the product after the accident, or the power to preserve the product).

The trial court has broad discretion in determining when sanctions are appropriate, and what sanctions to impose. *See Benedict v. St. Luke's Hospitals,* 365 N.W.2d 499, 504 (N.D.1985). Similar to Rule 37 sanctions, we believe inherent power sanctions require case-by-case analysis of all the circumstances presented in the case. *Vorachek v. Citizens State Bank of Lankin,* 421 N.W.2d 45, 51 (N.D.1988) (Rule 37). Valid considerations include, but are not limited to: the culpability, or state of mind, of the party against whom sanctions are being imposed; a finding of prejudice against the moving party, and the degree of this prejudice, including the impact it has on presenting or defending the case;[3] and, the availability of less severe alternative sanctions. *See Dillon,* 986 F.2d at 267–68; *Computer Associates Int'l, Inc.,* 133 F.R.D. at 169; *Nevada Power v. Fluor Illinois,* 108 Nev. 638, 837 P.2d 1354 (1992); *Stubli v. Big D Int'l Trucks, Inc., et al.,* 107 Nev. 309, 810 P.2d 785 (1991).

The record here and the court's order granting summary judgment are not sufficient to support the granting of summary judgment. The trial court has failed to sufficiently articulate the factual and legal issues involved, and to weigh and balance the degree of PACCAR's prejudice against the degree of Bachmeier's culpability. Specifically, although PACCAR has argued adamantly that it has been irreparably prejudiced by the destruction of the hub, it has not buttressed this claim with adequate proof. This finding of prejudice is especially critical in a case like this one, where the sanctioned party was, at most, neglectful, and the sanction being imposed is summary judgment.

PACCAR argues that because its experts had no opportunity to inspect, test, or preserve the hub, its ability to defend itself has been prejudiced. We agree that the destruction of the hub has affected PACCAR to its detriment in that it did not have the opportunity to have its own experts examine and test the wheel parts.[4] PACCAR also argues that the hub is "critical evidence" on the issue of lack of maintenance. This is a "catch–22" situation in that Bachmeier's theory of design defect does not necessarily require inspection of the actual hub, but PACCAR's defense of lack of lubrication very well may.

PACCAR argues that, with the hub, it could prove that the hub failed due to lack of lubrication of the bearings.[5] The inverse

---

3. Relevant to the question of impact on presentation or defense is the fact that the legal system has built-in safety devices. As a result, destruction of the hub has affected both parties in this case. Bachmeier, as the plaintiff in this products liability case, must establish a prima facie case in order to proceed. *Kaufman v. Meditec, Inc.,* 353 N.W.2d 297 (N.D.1984); N.D.C.C. ch. 28–01.1; *see also* Restatement (Second) Torts § 402A. Failure to adequately establish any of the necessary elements of the claim may result in dismissal. *See* Rules 12 and 56, N.D.R.Civ.P. Failure to adequately prove any of the elements at trial will result in a favorable outcome for the other party. In proving the case, Bachmeier faces what may be the difficult task of proving the elements of causation. These elements may be less burdensome here because the defect alleged by Bachmeier is "generic" in nature and not "aberrational": Bachmeier alleges the claimed defect is a design defect, present in all hubs made from this specific blueprint, and not just a manufacturing defect, present only in the hub

which was destroyed. On the other hand, it may be that Bachmeier has been affected by the destruction of the hub in that the legal theories available have been limited. A defect in manufacture claim is probably precluded by the absence of the hub. "Procedural rules relating to pleading and burden of proof as between litigants are rules that have the effect of allocating risks of losses between claimants and defendants just as surely as do rules of substantive law." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 103, at 712 (5th ed. 1984). These rules are designed in part to protect defendants from unsubstantiated claims.

4. It is undisputed that the hub was destroyed by Loper before this action against PACCAR was brought.

5. We think it is important to note that PACCAR's theory of defense is based in part on the expert findings and opinions of Loper. If the "lack of

of this, although suggested, has not been proven. PACCAR has not come forward with expert testimony to show that the missing hub is essential to its lack of lubrication defense. Because of the technical nature of the claim and defense, expert testimony seems essential to support it. *See Capitol Chevrolet, Inc. v. Smedley*, 614 So.2d 439 (Ala.1993); *Stubli*, 810 P.2d 785.

In reviewing PACCAR's brief in support of the motion for summary judgment, post-hearing brief, appendix that accompanied the initial motion, and miscellaneous correspondence related to the motion, there is no expert testimony which says the defense of lack of lubrication or maintenance cannot be proven due to the destruction of the hub. Loper photographed the hub from several angles, so there are multiple color photographs available for PACCAR to use as evidence. In addition, Loper made preliminary reports, and is able to testify as to these reports. This is distinguishable from cases where there is absolutely no evidence available, or the evidence which is available is clearly inadequate. *E.g., Dillon*, 986 F.2d at 286 (photographs not comprehensive, failed to document condition of product, and were grainy and blurred). There is no expert testimony in the record that attempts to establish why this evidence is not adequate to prove PACCAR's defense. What is included in the record is a legal argument advocating the preference of having the actual hub available. This is not adequate. We are not convinced that this is a case where unavailability of the hub, in and of itself, is adequate proof of prejudice. The record does not support the conclusion that PACCAR's defense would be insurmountably difficult without the hub.

▮▮▮▮ Although we agree with PACCAR and the trial court that the actual hub would be superior to the photographs and the testimony of Loper, dismissal of a case with prejudice requires more than an undifferentiated finding of prejudice. Prejudice is a matter of degree, and trial courts have the duty to impose the least restrictive sanction

in light of the circumstances. A determination of the appropriate sanction in a case such as this requires consideration of the significance of the detriment to PACCAR (and possibly to Bachmeier, as well), the culpability of Bachmeier, and the efficacy of lesser sanctions for leveling the playing field. Without these considerations, the trial court's analysis is incomplete. We reverse and remand for further proceedings consistent with this opinion, including a consideration of whether less restrictive sanctions might be appropriate at this stage of the proceedings.

SANDSTROM, J., concurs.

LEVINE, Justice, concurring in the result.

Unlike the Chief Justice, I am not sure I agree with most of what the majority says, but I do agree with its conclusion that we need an expert opinion to detail the extent of the defendant's prejudice in order to weigh the prejudice suffered against the remedy of dismissal. Like the Chief Justice, I agree that the defendant has suffered prejudice, but, like the majority, I am not sure just how much. The majority's insistence on expert testimony to help answer that question is prudent policy to follow before granting the extraordinary remedy of dismissal. I therefore concur in the result.

I embrace the following propositions, whether or not found in the majority or dissenting opinion:

1. As between plaintiffs and defendant, plaintiffs bear the responsibility for the absence of the hub and any risk arising from that absence. While plaintiffs did not destroy the hub intentionally, they either were negligent in protecting against destruction or made a conscious decision to forgo protecting against the destruction because there was deemed to be no viable claim against the manufacturer. In either event, the parties are not equally blameless for the destruction of the hub. Defendant had no opportunity to protect itself. Plaintiffs did.

2. Plaintiffs are proceeding on a design defect theory for which they need not rely on

---

lubrication" theory were nothing more than creative lawyering in an attempt to show theoret-

ical prejudice, this would be a different case.

the particular hub. Indeed, a cynic might venture that not only need plaintiffs not rely on the particular hub, but given the defense that this hub was not reasonably maintained, plaintiffs are well rid of the particular hub.

3. Defendant does need the particular hub because its defense is lack of lubrication, so the question is whether the available photos of the hub and circumstantial evidence are reasonable substitutes for the actual thing. So far, we have only the argument of defendant's counsel and our own common sense that defendant is prejudiced, which are, of course, helpful and necessary to our legal determination of prejudice but, in this case, not sufficient to justify dismissal. Because defendant relies on the hub for its defense there is certainly prejudice to the defendant. However, the trial judge and we need to know the extent of prejudice to defendant's case. *See Dillon v. Nissan Motor Co.*, 986 F.2d 263 (8th Cir.1993) [upholding exclusion of evidence at trial because trial record established prejudice where photos were grainy and not comprehensive, and vehicle that was destroyed "was evidence which may have proved helpful to the defense"]. The parties are not equally victimized by the destruction of the hub, despite any contrary suggestion.

The bottom line here is whether the defendant can mount a successful defense based upon the color photos and circumstantial evidence or whether the tests it would have conducted and other evidence it would have garnered from the hub were indispensable and if so, what were they and why crucial, and without which, what effect? If defendant produces that kind of elucidating expert testimony to establish serious prejudice, dismissal may be an appropriate exercise of the court's inherent authority.

Therefore, I concur in the result.

MESCHKE, J., joins.

VANDE WALLE, Chief Justice, dissenting.

With the exception of the conclusion, I agree with most of what is said in the majority opinion. I therefore respectfully dissent.

The issue is clear. Bachmeiers hope to prove a design defect in the hub. The defect, if it exists, is present in all the hubs PACCAR manufactured and can be proven by any hub manufactured from that design.

PACCAR hopes to defend, for purposes of this issue, on a theory that the cause of the failure was the lack of lubrication of the destroyed hub, notwithstanding any defect in the design, (which they do not concede but in any event, is not material for purposes of this issue). The lack of lubrication is not a fabricated-for-the-moment defense but is supported by Loper, the plaintiffs' expert witness.

Because the issue is relatively simple, I do not agree that a remand for the purpose of further expert testimony is justified. It does not require expert testimony to tell us that a design defect may be proven without the actual hub but a defense of lack of lubrication as causation of the failure of the hub cannot be proven without the actual hub. PACCAR is therefore prejudiced in a real sense. Thus, the parties are not "equally prejudiced by the destruction of the hub." These "equal 'prejudices'" do not, "in some manner, cancel each other out," and a "'two tie, all tie' analysis is simply incorrect." *Headley v. Chrysler Motor Corporation*, 141 F.R.D. 362, 366 (D.Mass.1991). Rather, PACCAR is prejudiced in the real sense.

I believe the trial court adequately weighed the arguments, including the fact photos of the hub are available although taken for purposes other then to illustrate lubrication of the hub or lack thereof. I would affirm the judgment of the district court.