Martha Ann Cosgriff **RUDH,**
Plaintiff and Appellee,

v.

Lawrence William **RUDH,** Defendant
and Appellant.

Civ. Nos. 930253, 930342.

Supreme Court of North Dakota.

June 15, 1994.

Walter M. Lipp, McClusky, for petitioner and appellant. Appearance by Gary Hoffart.

Michael S. McIntee, McIntee Law Firm, Towner, for respondents and appellees. Appearance by Elizabeth Voeller.

R. Lee Hamilton of Hamilton, Juntunen & Cilz, Grand Forks, for defendant and appellant.

Patrick W. Fisher of McConn, Fisher, Olson & Daley, Grand Forks, for plaintiff and appellee.

LEVINE, Justice.

Lawrence W. Rudh appeals from judgment granting a divorce to his former spouse, Martha Ann Cosgriff Rudh, and from the trial court's order granting Martha temporary spousal support and attorney fees to defend this appeal. We affirm in part and reverse in part and remand.

Lawrence and Martha were married on November 25, 1983, in Fargo. On November 21, 1983, Martha and Lawrence entered into a premarital agreement, which purported to remove Lawrence's lake home from the couple's marital property. Three children were born during the marriage. Lawrence and Martha separated in January 1992 and were divorced on July 19, 1993.

During trial, Lawrence offered into evidence the premarital agreement. Martha objected, arguing that Lawrence had failed to raise the premarital agreement as a defense in his answer to the complaint, and had failed to disclose the premarital agreement in his answers to Martha's interrogatories. The trial court received the premarital agreement into evidence, subject to Martha's objection. In its memorandum decision and order, the trial court stated that by failing to assert the premarital agreement as a factor affecting property distribution in his answers to Martha's interrogatories, and because Martha was not represented by counsel when she signed the agreement, Lawrence had "waived his right to rely on the [premarital] agreement," and thus the trial court refused to enforce it.

The trial court awarded physical custody of the three children to Martha and ordered Lawrence to pay child support. The trial court did not order spousal support, but expressly reserved jurisdiction to award spousal support in the future, should it become necessary. The trial court accepted Martha's valuation and allocation of the couple's

property and household furnishings. Lawrence appealed from the divorce judgment and moved for a stay of execution of the judgment. Martha moved for temporary spousal support and child support, and for attorney fees for the appeal. The trial court granted the stay and ordered Lawrence to pay monthly spousal support of $2,623 and child support of $1,877 from September 1993 through the pendency of the appeal, and $6,000 in attorney fees for the appeal. Lawrence then appealed from the trial court's order of monthly spousal support and attorney fees. Lawrence's appeals were consolidated.

## I.  *Findings of Fact*

◼ Lawrence challenges the trial court's valuation of the marital estate, division of property, and determination of child support.[1] We hold that these determinations are not clearly erroneous, and accordingly, affirm under NDRAppP 35.1(a)(2).

## II.  *Temporary Spousal Support*

◼ In its memorandum opinion accompanying the divorce judgment, the trial court found that Martha and the children required $4,500 a month to maintain the standard of living to which they had become accustomed. *See Bagan v. Bagan*, 382 N.W.2d 645, 646 (N.D.1986). The trial court awarded this amount to Martha in the form of income from the property awarded to her and child support. When the trial court granted a stay of the judgment, it also ordered Lawrence to pay temporary support, $2,623 per month in spousal support and $1,877 per month in child support, to provide for Martha's and the children's living expenses during the pendency of this appeal.

Lawrence argues that the trial court should have correlated the award of temporary spousal support with the income Martha would receive from the property awarded her in the judgment to avoid "double recovery" if we affirm. On the other hand, Martha's attorney assures us that the trial court will credit Lawrence for support payments in its accounting. It is not clear from the record who is right. In any event, it is clear to us

that the trial court awarded temporary child and spousal support to counteract the effect of the stay, which prevented Martha from receiving income from the assets awarded her during the pendency of the appeal. The trial court obviously did not intend Martha to receive double payments during the pendency of the appeal, nor does Martha so argue. Therefore, we remand so that the trial court can offset the amount of the temporary spousal support payments against Martha's right to the income from her assets during that time.

## III.  *Future Spousal Support*

◼ Lawrence argues that the trial court erred in retaining jurisdiction over spousal support. The parties have not asked us, nor do we choose, to revisit *Becker v. Becker*, 262 N.W.2d 478 (N.D.1978). In *Becker*, we held that where a trial court makes no initial award of spousal support and fails to reserve expressly its jurisdiction, the trial court subsequently lacks jurisdiction to order spousal support. Here, a substantial portion of the marital estate is mineral interests. The trial court expressed its concern about the volatility and possible depletion of some of the income-producing assets awarded to Martha and expressly reserved jurisdiction should the changing conditions warrant an award of spousal support. Given the trial testimony and arguments on appeal regarding the fluctuating value of and income produced by the assets, we conclude that the trial court did not abuse its discretion in exercising caution and reserving its jurisdiction over spousal support.

## IV.  *Premarital Agreement*

◼ Lawrence argues that the trial court erred in refusing to enforce the premarital agreement. The trial court refused to enforce the premarital agreement because Martha "was not represented by counsel, and the existence of the agreement was not asserted by [Lawrence] in answers to interrogatories as a factor affecting property distribution." We need not reach the issue of whether the premarital agreement was invalid solely for lack of counsel, as we conclude that the trial court did not abuse its discretion in refusing

---

1.  Lawrence is represented by new counsel on appeal.

to enforce the agreement because of Lawrence's failure to disclose his reliance on it in his answers to interrogatories.

Martha submitted the following interrogatory to Lawrence:

"41. List any other factors which you claim the court should consider when making an 'equitable division' of your property so as to give you special consideration in the form of additional property, and state with particularity and not in general terms, your reasons or basis for such a claim."

Lawrence responded only by objecting to the interrogatory on the ground that it did not seek the disclosure of facts and invoking the attorney-client privilege. Lawrence did not disclose his intent to rely on the premarital agreement until his deposition, thirteen days before trial.[2]

Although the trial court stated only that Lawrence had "waived his right to rely on the [premarital] agreement," Lawrence characterizes the trial court's refusal to enforce the premarital agreement as the imposition of a discovery sanction under NDRCivP 37. Rule 37(b) provides authority for a trial court to impose sanctions for a party's failure to answer interrogatories.[3] A party's evasive or incomplete answer to an interrogatory is treated as a failure to answer under the rule. NDRCivP 37(a)(3). It appears that Rule 37 addresses the situation at hand, because Lawrence's answer could be deemed evasive or incomplete. But a trial court may not impose sanctions under Rule 37(b) until a party violates a discovery order: "[I]f a party's discovery responses are inadequate, the party seeking discovery must apply to the court for an order to compel discovery and

---

2. The deposition is not part of the record on appeal.

3. Rule 37 says, in part:
   "(a) *Motion for order compelling discovery.* A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:

   . . . . .

   "(2) *Motion.* If a deponent fails to answer a question propounded or submitted under Rules 30 and 31, or a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a), or a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. While taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before applying for an order.
   "If the court denies the motion in whole or in part, it may make such protective order as it would have been empowered to make on a motion made pursuant to Rule 26(c).
   "(3) *Evasive or incomplete answer.* For purposes of this subdivision an evasive or incomplete answer is to be treated as a failure to answer.

   . . . . .

   "(b) *Failure to comply with order.*

   . . . . .

   "(2) *Sanctions by court in which action is pending.* If a party or an officer, director, superintendent, or managing agent of a party or a person designated under rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide [or] permit discovery, including an order made under subdivision (a) or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure that are just, and among others the following:
   "(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
   "(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
   "(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
   "(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination."

[Rule 37(b) ] sanctions cannot be invoked until that order is disobeyed." *Production Credit Ass'n v. Foss*, 391 N.W.2d 622, 624 (N.D.1986); *see also Dakota Bank & Trust Co. v. Brakke*, 377 N.W.2d 553, 555 (N.D. 1985); *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir.1991) ["Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order."]. Because Martha did not move for an order to compel discovery and the trial court did not issue one, the trial court's refusal to enforce the premarital agreement is not a sanction under Rule 37(b). *See Bachmeier v. Wallwork Truck Ctrs.*, 507 N.W.2d 527, 531–32 (N.D.1993) [concluding that trial court's order granting summary judgment could not have been invoked under Rule 37 because no discovery order was issued or violated].[4]

However, our analysis does not end there. The trial court's conclusion that Lawrence "waived" his right to rely on the premarital agreement and its refusal to enforce the agreement may be understood as the exercise of its inherent power to protect the integrity of its processes by imposing sanctions. *See Bachmeier, supra* at 532–35. We will overturn a trial court's sanctions based on this inherent power only upon a showing that the trial court abused its discretion. *E.g., id.* at 533.

We have not uncovered, nor have the parties cited, a case directly on point. On several occasions, however, we have upheld a trial court's exercise of its inherent power to impose sanctions for a party's failure to supplement its answers or to give correct answers to interrogatories. In *Benedict v. St. Luke's Hosps.*, 365 N.W.2d 499, 503–04 (N.D.1985), we upheld the trial court's refusal to allow the plaintiffs to present evidence of specific hospital standards where the plaintiffs did not indicate in their answers to interrogatories that they intended to rely on those stan-

dards. The defendants did not move for an order to compel discovery, but objected to the plaintiffs' attempt to introduce such evidence at trial. We analyzed the trial court's action as an exercise of its inherent power to impose sanctions for giving an incorrect response or for failing to supplement a response to an interrogatory. In *Dewitz by Nuestel v. Emery*, 508 N.W.2d 334, 338–40 (N.D.1993), we upheld the trial court's exclusion of the defendant's expert witness as a discovery sanction for failing to supplement her answers to interrogatories within a reasonable time before trial. The plaintiffs did not move for an order to compel discovery, but moved for the exclusion of the expert witness upon receiving, thirty-nine days before trial, a supplemental answer listing the opinions to which the expert witness would testify. We construed the trial court's order granting the plaintiffs' motion as a sanction based on its inherent authority.

▪ This case is not much different from *Benedict* and *Dewitz*. Although Lawrence's answer to Martha's interrogatories could be deemed evasive or incomplete and therefore governed by Rule 37, we believe his answer more aptly is characterized as incorrect or inadequately supplemented and therefore sanctionable under the trial court's inherent power. *See Benedict, supra*. In any event, the availability of sanctions under the Rules of Civil Procedure does not necessarily preclude imposition of sanctions under the court's inherent power. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 41–50, 111 S.Ct. 2123, 2131–36, 115 L.Ed.2d 27 (1991) ["[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."]; *see also id.* at 50, 111 S.Ct. at 2136 ["[I]f in the informed discretion of the court, . . . the rules are [not] up to the task, the court may safely rely on its inherent power."]. Lawrence invoked the attorney-client privilege in his response; yet, we

---

4. Not all sanctions under Rule 37 must be preceded by a violation of a court order. The court may impose sanctions under Rule 37(c) and (d) without issuance and violation of a discovery order. 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2289, at 790 (1970). Subsection (d) is applicable when a party fails to serve answers to a set of interrogato-ries. However, a party's failure to respond to only some of the interrogatories in the set, or a party's evasive or incomplete answers to some interrogatories, properly are addressed under Rule 37(a) and (b), not Rule 37(d). *Id.* § 2291, at 809–10; *see also, e.g., Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1339–40 (9th Cir.1985).

fail to see how the premarital agreement, seen by Martha before she signed it, is a "confidential" communication protected by the attorney-client privilege. *See* NDREvid 502(b). Rules of privilege are narrowly construed because they derogate "the search for truth." *Knoff v. American Crystal Sugar Co.*, 380 N.W.2d 313, 319 (N.D.1986). Nonetheless, assuming that Lawrence did not invoke the attorney-client privilege frivolously, he should have supplemented his response once he decided to rely on the premarital agreement. A party must seasonably amend a response that it knows to be no longer correct when "failure to amend the response is in substance a knowing concealment." NDRCivP 26(e)(2)(B). Lawrence did not supplement his response and the trial court acted to protect the integrity of the system. While any prejudice to Martha could have been obviated by a continuance, if one had been requested, the trial court is the ultimate gatekeeper responsible for doing justice. In rare cases, it may feel compelled to exercise its inherent power to sanction abuses that undermine the purpose of our rules of procedure "to secure the just, speedy, and inexpensive determination" of a case. NDRCivP 1. A party who tactically subverts the flow of information contemplated by the discovery rules bears the risk of sanctions under the Rules or sanctions under the courts' inherent power. A party who gives an incorrect, yet, unsupplemented, answer is properly subject to sanction in the discretion of the trial court. We conclude that the trial court did not abuse its discretion in refusing to enforce the premarital agreement.

### V. *Attorney Fees*

■ Lawrence argues that the trial court abused its discretion in awarding Martha $6,000 in attorney fees to defend Lawrence's appeal. This case is different from most of our cases involving attorney fees on appeal because here we are faced with review of a preliminary award of attorney fees, before any expenses have been incurred. Preliminary awards of attorney fees are appropriate where necessary to finance the appeal. *See Severson v. Severson*, 482 N.W.2d 594 (N.D.1992). "[M]any spouses or their attorneys may well have no real choice but to seek an early award in order to finance the appeal." *Id.* at 595 n. 4. Although this court and the trial court have concurrent jurisdiction to award fees on appeal, we prefer that the trial court make the initial determination of attorney fees on appeal in a divorce action. *Orwick v. Orwick*, 152 N.W.2d 95, 97 (N.D. 1967). The trial court is in the superior position to consider the parties' need for and ability to pay attorney fees under NDCC § 14-05-23. *McIntee v. McIntee*, 413 N.W.2d 366, 367 (N.D.1987). A trial court's award of attorney fees on appeal must be supported by evidence. *Id.* We will not disturb a trial court's award of attorney fees on appeal without an affirmative showing that the trial court abused its discretion. *E.g., Hoster v. Hoster*, 216 N.W.2d 698, 703 (N.D.1974).

In *Pozarnsky v. Pozarnsky*, 494 N.W.2d 148, 151 (N.D.1992), we reversed the trial court's award of attorney fees in an action to modify custody and child support. We held that the party's affidavit, which was "not in the form of the financial statement prescribed by NDROC 8.2(g)" and was "too general and conclusory," was insufficient evidence to allow us to review the reasonableness of the amount of fees awarded. *See also McIntee, supra* at 367.

■ Lawrence contends that "there is no evidence" to support the trial court's award of attorney fees to Martha. We disagree, to the extent that there was evidence of Martha's need for and Lawrence's ability to pay attorney fees. Although Martha did not provide a financial statement in accordance with NDROC 8.2(g), the trial court had before it evidence of each party's financial status. Unlike *Pozarnsky*, the issues before the trial court, particularly property division and spousal support, directly involved both parties' finances. The parties had submitted a complete listing of their property and debts under NDROC 8.3, income tax returns, and summaries of their income and expenses.

More troubling, however, is the lack of evidence to support the amount of attorney fees Martha would incur on appeal. Of course, a preliminary award of attorney fees involves some speculation, but it need not be,

indeed, cannot be rank speculation. There must be sufficient evidence to allow the trial court to make an educated guess and to permit us to determine on appeal whether the amount awarded is reasonable under the circumstances. We believe this requires, minimally, evidence of the attorney's hourly rate and the estimated number of hours to be expended along with a description of the anticipated services. Here, in support of the amount of attorney fees, Martha offered only her affidavit, which stated, "Attorney's fees on appeal are estimated to be approximately $6000.00." This is insufficient for review of the reasonableness of the award. Since the appeal has been all but concluded, it should be a simple matter for Martha to establish the actual amount of her attorney fees reasonably incurred in this appeal. Therefore, we reverse the award of preliminary attorney fees and remand for the trial court to determine whether it should modify its preliminary award of attorney fees in light of the fees actually incurred on appeal.

Affirmed in part and reversed in part and remanded.

VANDE WALLE, C.J., and NEUMANN and SANDSTROM, JJ., concur.

MESCHKE, Justice, concurring.

I concur in the result of the majority opinion. While I agree with the majority that a party "who gives an incorrect, yet, unsupplemented, answer is properly subject to sanction," I write separately to question the use of inherent powers, rather than the discovery rules, to justify the sanction imposed in this case. I would say that NDRCivP 37(d) is a preferable authorization for the sanction for a "complete" failure to timely disclose an item of evidence, like the premarital agreement in this case, when any reasonable interpretation of the relevant interrogatory clearly called for it.

There are limits to a court's inherent powers where rules of civil procedure apply. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988) (holding that a court cannot rely on supervisory power to avoid the clear mandate of a procedural rule); *United*

*States v. One 1987 BMW 325*, 985 F.2d 655, 661–62 (1st Cir.1993) (where FRCivP 37 proper mechanism for parties when discovery stalled, order striking appellant's claim without Rule 37 analysis reversed). *Compare Chambers v. NASCO, Inc.*, 501 U.S. 32, 50–51, 111 S.Ct. 2123, 2136, 115 L.Ed.2d 27 (1991) (allowing use of inherent powers where procedural rules did not limit the nature of the sanction that could be imposed). When the discovery rules identify the sanctions that can be imposed, a court may not properly use its inherent powers to circumvent the NDRCivP's specific directions.

NDRCivP 37(d) says: "If a party ... fails: ... (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories; ... the court ... may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B) and (C) of subdivision (b)(2)." A direct order by the court, as required for sanctions under NDRCivP 37(a) and (b), is not a prerequisite to imposition of a sanction under NDRCivP 37(d).

Unless there has been a complete failure to respond or object to the interrogatory set, this court in prior decisions has avoided discussing the potential application of NDRCivP 37(d). *See Benedict v. St. Luke's Hospitals*, 365 N.W.2d 499 (N.D.1985) (failure to disclose intended reliance on certain published medical standards in an answer to supplemental interrogatory); *Dewitz by Nuestel v. Emery*, 508 N.W.2d 334, 339 (N.D.1993) (failure to make "a full, thorough and complete" supplemental answer to interrogatories about the substance of the testimony of the party's expert). The majority opinion in this case avoids that analysis, too, by observing in footnote 4, with little discussion, that "a party's evasive or incomplete answers to some interrogatories[ ] properly are addressed under Rule 37(a) and (b), not Rule 37(d)."

Rule 37(a)(3) says:

*Evasive or incomplete answer.* For purposes of this subdivision an evasive or incomplete answer is to be treated as a failure to answer.

The limiting clause in 37(a), "[f]or purposes of this subdivision," contrasts with Rule

37(d)'s concern with "total noncompliance." *See* FRCivP 37 advisory committee's note on the 1970 Amendment to Rule 37(d), *reprinted in* Federal Civil Judicial Procedure and Rules at 153 (West 1994). Still, the distinction between "total noncompliance" and "an evasive or incomplete answer" is not absolute. It hardly matters when there is a full trial with the rejection sanction of a single item of undisclosed evidence, and not the extreme sanction of default or dismissal.

One commentator explains:

In the case of failure to answer interrogatories, or respond to a request for inspection, the question as to whether there has been a failure to answer is not always so easily decided. When no answers at all are forthcoming, the party served with the interrogatories or requests is obviously derelict and within the coverage of Rule 37(d). When the only response to a set of interrogatories was the statement "unable to respond," the court held that such an answer was no answer at all and sanctionable under Rule 37 as a refusal to answer. Short of this, however, are answers which have been served but are false, evasive or inadequate, not sworn, or late. Further, since normally interrogatories and requests are served in sets, the party served with the set may serve answers, but for one reason or another fail to answer one or more individual items. The nice distinction between conduct warranting sanctions under (d) and conduct requiring an order of the court under (a) before sanctions can be applied, has not always been made, but is often unnecessary because only rarely is an action actually dismissed, or a default judgment entered, without giving the delinquent party an opportunity to answer. This matter was made less important by the 1970 amendments, for while it seems that relief as to failure to answer or object to a particular interrogatory or request falls under Rule 37(d) and permits the immediate imposition of sanctions, the range of sanctions is much wider.

4A Moore's Federal Practice ¶ 37.05, pp. 37–125 et. seq. (2d ed. 1994) (footnotes omitted). In a case like this, where there is absolutely no reason for the interrogating party to seek an order to compel an answer, Lawrence's spurious objection and claim of a non-existent privilege was more like "no answer at all" than an incomplete answer, when it failed to disclose a key item that Lawrence sought to rely on at the trial.

NDRCivP 37(d)(2) expressly refers back to 37(b)(2) for permissible sanctions under paragraphs (A), (B), and (C), but not (D) and (E). NDRCivP 37(b)(2)(B) specifically authorizes an order "prohibiting that [disobedient] party from introducing designated matters in evidence." Other courts have approved a Rule 37(d) sanction for incomplete or evasive answers that are so obvious or willful that they justify sanction without a prior court order. *See Fox v. Studebaker–Worthington, Inc.,* 516 F.2d 989, 992–93 (8th Cir.1975); *Airtex Corp. v. Shelley Radiant Ceiling Co.,* 536 F.2d 145, 155 (7th Cir.1976) ("answers were evasive and incomplete and appear to have been framed to impede discovery rather than to facilitate it;" and "when, as here, the fact that answers to interrogatories are evasive or incomplete cannot be determined until further proceedings have been conducted to obtain the information later determined to have been withheld, the evasive or incomplete answers are tantamount to no answer at all, and rule 37(d) is applicable"); *Barker v. Bledsoe,* 85 F.R.D. 545, 548–49 (W.D.Okla. 1979) (FRCivP 37(d) sanction prohibited plaintiff from using at trial any evidence, opinion, or inference arising from an autopsy where plaintiff failed to supplement "somewhat remiss" and late answers to interrogatories that failed to disclose autopsy report); *Minnesota Mining & Manufacturing Co. v. Eco Chem, Inc.,* 757 F.2d 1256 (Fed.Cir.1985) ("unable to respond," no answer at all). The reasons for these decisions is that, otherwise, a deliberate abuse would go unpunished.

For these reasons, I would affirm the trial court's refusal to enforce the premarital agreement on NDRCivP 37(d) grounds, rather than inherent powers of the trial court. In all other respects, I join in the majority opinion.