Jon DEWITZ, by his Guardian Ad Litem
Kent NUESTEL, Richard Dewitz and
Lynn Dewitz, Plaintiffs and Appellees,

v.

Regina EMERY, Defendant
and Appellant.

Civ. No. 930096.

Supreme Court of North Dakota.

Nov. 10, 1993.

A. William Lucas of Lucas Law Office, Bismarck, for defendant and appellant.

David L. Peterson of Wheeler Wolf, Bismarck, for plaintiffs and appellees.

SANDSTROM, Justice.

Regina Emery appeals from a judgment against her in favor of the plaintiffs, Jon Dewitz, and his parents Richard and Lynn Dewitz. We affirm, holding:

(1) The record does not support Emery's claims of judicial bias;

(2) The district court's decision to exclude evidence of Jon Dewitz's failure to obtain a motorcycle license was not prejudicial error;

(3) The district court's exclusion of one of Emery's expert witnesses was not an abuse of discretion; and

(4) The district court did not err in refusing to reduce the verdict under the collateral source reduction provisions of N.D.C.C. § 32–03.2–06.

I

Jon Dewitz and his parents sued Regina Emery following a September 18, 1989, accident involving Emery's car and Dewitz's motorcycle. At the time of the accident, Dewitz was fifteen years old. The accident occurred as Dewitz was driving north on the Tappen exit overpass of I–94 and Emery was exiting I–94.

The case was twice tried to a jury, with District Judge William F. Hodny presiding over both trials. At the end of the first trial, the jury found Dewitz 60 percent negligent and Emery 40 percent negligent. Dewitz and his parents moved for a new trial. The trial court granted the motion, concluding:

"There was an error in law and an irregularity in the proceedings, in that evidence was presented to the jury which was prejudicial and not of probative value. The jury was informed that Jon Dewitz was illegally driving the motorcycle, because of the engine size that he had and that Jon was illegally driving without a driver's license to drive a motorcycle. Upon reflection and review of the evidence and proceedings at the trial, it appears to the court that evidence of those two items was not causally connected to the accident or injuries, that such evidence was prejudicial, and that it was error to have admitted them.

\*    \*    \*    \*    \*    \*

"Plaintiffs' motion for new trial is granted on the ground of error in law."

Prior to the second trial, Emery requested Judge Hodny recuse himself. The judge refused. In response, Emery petitioned this Court for a supervisory writ. We denied the petition.

The second trial resulted in a jury verdict finding Dewitz 30 percent negligent, and Emery 70 percent negligent. The jury awarded the plaintiffs $165,804 in damages, which resulted in a damage judgment of $116,062.80. Emery moved for a new trial under Rule 59(b), N.D.R.Civ.P., claiming irregularity in the proceedings of the court, and error in law. The motion for a new trial was denied and this appeal followed.

## II

█ Emery claims the trial court was biased against her, denying her a fair trial. In support of her position, Emery cites several statements made by the judge. We have reviewed Emery's examples, along with the complete transcript of the proceedings. Only two of the judge's comments merit discussion.

At both the first and second trial, Emery was represented by A. William Lucas. At the second trial, Dewitz was represented by David L. Peterson. During Lucas's cross-examination of Dewitz, the following exchange took place between Lucas and Dewitz:

"Q. And I indicated on page 58, line 10, Jon, do you remember when I took your deposition back in May 17, 1991? You answered yes. At that time you indicated you were concerned about your memory of your accident, didn't you, and you answered no. Didn't you tell me you were rehearsing this whole accident and refreshing your memory daily so you didn't—

"A. Not daily. We went over things that happened every once in awhile.

"Q. My question was: You've spent a lot of time trying to keep these facts in mind and rehearsing for this trial again.

"MR. PETERSON: Your Honor, he is using the term rehearsing.

"THE COURT: Sustained. You can argue that to the jury in argument. You are not permitted to make comments on the evidence in examination of the witness. It is highly improper.

"MR. LUCAS: Okay."

Similarly, during Lucas's direct-examination of Regina Emery, the following exchange occurred.

"Q. Now, there is some—apparently there is some dispute as exactly where your car was when it was parked and Mr. Daubert drew the car in this position, as I understood it, when it was parked. Does that look like the way your car was at the time it was stopped?

"MR. PETERSON: Your Honor, I am going to object to that question. Mr. Lucas and Mr. Daubert had a discussion about that as an illustrative exhibit. The 'to scale' exhibit is that what Mr. Daubert drew on another exhibit. I object to him making that characterization.

"THE COURT: Sounds like a deliberate misrepresentation of Mr. Daubert's testimony. Objection sustained.

"MR. LUCAS: I don't think—he has got the motorcycle sliding right into the parked car—

"THE COURT: Have you any more questions for your witness?"

█ A trial judge appropriately may admonish attorneys when they stray into improper areas and use improper questioning techniques. Admonishment that could influ-

ence the jury in its consideration of the case should take place out of the jury's hearing. As we explained in *Haugen v. Mid–State Aviation, Inc.,* 144 N.W.2d 692, 696 (N.D. 1966):

"A trial judge should, of course, maintain at all times an impartial attitude in the trial of the case over which he presides. He should not, by word, by question, by his attitude, or by any conduct on his part, do anything which may influence the jury in its consideration of the case. He should make no remarks which would show bias on his part in favor of any party to the lawsuit. Other than that, however, the trial judge is allowed great latitude and discretion in conducting the trial and, except for an obvious abuse of that discretion, his conduct of the trial will not be grounds for reversible error. The trial judge is the one who determines how the trial should be conducted. It is within his discretion, to keep the trial of the case within reasonable bounds and, where counsel for the defendant was going into collateral and immaterial matters, it was within the legal discretion of the trial court to keep the questions within bounds."

■ If a party does not object to the trial court's allegedly prejudicial remarks, the party waives the issue of error and cannot later complain. *Kern v. Art Schimkat Construction Co.,* 125 N.W.2d 149, 154 (N.D. 1963); *Gleson v. Thompson,* 154 N.W.2d 780, 785 (N.D.1967); *Sabot v. Fargo Women's Health Organization, Inc.,* 500 N.W.2d 889, 894 (N.D.1993). Although Lucas mentioned in chambers he disagreed with the court's conclusion that he was misrepresenting evidence, Lucas never objected to specific comments and cannot now claim reversible error.

Further, the record indicates the court, on its own initiative, added the following additional cautionary instruction at the close of the trial:

*"STATEMENTS OR ACTIONS OF JUDGE*

"I wish to repeat one of the opening instructions.

"It is very important that you understand that although I am neutral in this case it was my duty to make certain rulings and to conduct the trial. In making these rulings and in conducting the trial, I did not intend to suggest to you how you should decide any questions of fact in this case. If anything I said or did appears to you to intimate how you should decide, please be assured it was unintentional and you should disregard it and form your own opinion. If I made any comment concerning the evidence which you find is not warranted by the evidence, you should wholly disregard my comment and rely upon your own recollection or observation."

Considering the record as a whole, Emery has failed to substantiate her claim of judicial bias.

III

■ Emery challenges the trial court's decision to exclude from evidence Dewitz's lack of a valid motorcycle license at the time of the accident.

At the first trial, Emery was allowed to introduce into evidence, over Dewitz's objection, Dewitz's lack of a valid motorcycle license at the time of the accident. In its memorandum decision granting Dewitz's motion for a new trial, the court concluded that allowing Emery to introduce evidence of Dewitz's failure to have a license was prejudicial error, and at the next trial, such evidence would be excluded under Rule 403, N.D.R.Ev.

Before the second trial, Dewitz made a motion in limine to exclude all reference to his license status. The court granted the motion, concluding Dewitz's lack of a motorcycle license was evidence of general negligence, which was not admissible to prove Dewitz was negligent at the time of the accident. Emery contends the trial court's decision "doomed her from the beginning."

■ Under Rule 402, N.D.R.Ev., "[a]ll relevant evidence is admissible, except as otherwise provided...." Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence

to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, N.D.R.Ev. Relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, ..." Rule 403, N.D.R.Ev. As we explained in *State v. Huwe*, 413 N.W.2d 350 (N.D.1987), "[w]hether evidence is too remote to be relevant and whether the probative value of such evidence is outweighed by the risk of unfair prejudice are questions for the trial court to resolve in the exercise of its sound discretion." *Huwe* at 352. We will not disturb the trial court's exercise of discretion, unless there has been an abuse of discretion which affected substantial rights of the parties. *Swiontek v. Ryder Truck Rental, Inc.*, 432 N.W.2d 893, 896 (N.D.1988); *see also* Rule 103(a), N.D.R.Ev., ["Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, ..."].

Emery's defense was Dewitz could have avoided the accident if he had correctly operated his motorcycle. According to this theory, Dewitz did not correctly operate his motorcycle because he had not been properly trained to safely drive a motorcycle. In an effort to prove her case, Emery questioned Dewitz on his motorcycle training and experience, and on the actions he took to avoid the accident. Additionally, Emery offered expert testimony on proper motorcycle operation, and on the skills Dewitz would have been taught if he had taken the mandatory motorcycle safety course.

Whether or not Dewitz competently operated his motorcycle was a question of fact for the jury to resolve. The jury was given considerable evidence as to Dewitz's competence to operate a motorcycle, and whether or not he was competently operating the motorcycle at the time of the accident. Because Emery was allowed to introduce considerable evidence as to Dewitz's actual competence, including that Dewitz had not completed the mandatory safety course, we conclude the trial court's exclusion of Dewitz's license status did not affect Emery's substantial rights, nor was it an abuse of discretion.

## IV

■ Emery claims the trial court committed reversible error when, as a discovery violation sanction, it excluded her expert, Charles Coons, from testifying at trial. We conclude the trial court did not abuse its discretion by excluding Coons.

On May 19, 1992, in preparation for the second trial, the plaintiffs served "Request to Supplement Interrogatory Answers" on Emery. On July 2, 1992, plaintiffs' counsel sent a letter to Emery's counsel reminding him of the request for supplemental interrogatory answers. The letter said the answers were ten days overdue. On July 7, 1992, Emery's counsel responded by letter acknowledging receipt of the request for supplementation, and added:

"We will supplement those answers in a reasonable time prior to trial. I am not aware of any rule or order that would require the interrogatory answers to be supplemented by June 22, 1992, and I take issue with your statement ... that our answers are ten (10) days overdue.

"If you believe that I am in error, would you please provide authority for your statement that our supplemental answers were due. on June 22, 1992."

On November 4, 1992, 39 days before trial, Emery served Dewitz with "Defendant's Supplemental Answers to Interrogatories and Requests to Defendant, Set No. 1 and Supplemental Disclosure of Expert Witnesses and Expert Witness Opinions." The supplemental disclosure indicated for the first time that Emery intended to call Charles W. Coons as an additional expert witness. The disclosure provided, in part:

"Mr. Coons' opinions have not been fully developed. It is expected that his opinions will be the following: ... Generally that the accident was caused by Jon Dewitz. It is expected that expert witness Charles W. Coons will give the following opinions and testify in regard to the following matters: ..."

The disclosure then listed the same 25 items listed for Emery's other two expert witnesses.

Dewitz moved to exclude Coons from testifying, arguing the disclosure was not timely, Coons' testimony would be cumulative, and Coons' opinions had not been fully disclosed because Coons' opinions had not been fully developed. The trial court granted the motion and excluded Coons from testifying at the second trial. The court explained:

"I am very loathe to exclude evidence on behalf of discovery rules, but in the case of experts we do have some special rules that have to be adhered to. First of all, you can't even take the deposition of a witness unless you ask the court to do so. And, basically, the plaintiffs in this case, unless they get court permission to take the deposition of the experts, are limited to interrogatories. To those interrogatories they are entitled to a full, thorough and complete answer. That's pursuant to Rule 26. With an answer like this, I don't think they have been given a full and complete answer. That plus the fact that it was given only 39 days before trial really convinces me that I should not allow Mr. Coons to appear as a expert witness because there has been a violation of the discovery rules."

Emery was under a duty to disclose Coons' opinions. Under Rule 26(e), N.D.R.Civ.P.:

"(1) A party is under a duty seasonably to supplement the response with respect to any question directly addressed to

    \*    \*    \*    \*    \*    \*

"(B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony."

■ Rule 26(c) does not establish a fixed time prior to trial within which interrogatories must be supplemented so as to be seasonable. The determination as to seasonableness is necessarily a case by case determination, within the sound discretion of the trial judge. To be seasonable, however, the supplemental response must be made a reasonable time before trial taking into account the purpose of the rule which is the elimination of surprise at trial. *See Hudson v. Parvin,* 582 So.2d 403, 412 (Miss.1991); *Ol-*

*son v. A.W. Chesterton Co.,* 256 N.W.2d 530, 539 (N.D.1977).

■ No sanction is specified under Rule 37, N.D.R.Civ.P., for a party's failure to adequately supplement interrogatories. A trial court, however, has discretionary authority to determine an appropriate sanction for a party's failure to supplement interrogatories:

"In the absence of a rule speaking to the question, reliance must be on the inherent power of the court. There has been a reluctance to use inherent power as the basis of sanctions, and it would have been desirable to tie Rule 37 directly to the situation here being discussed [failure to supplement interrogatories], but since this was not done the courts must be held to have inherent power to protect the integrity of their processes by imposing sanctions for giving an incorrect response and for failing to supplement a response.

"The court necessarily has wide discretion in these matters."

*Benedict v. St. Luke's Hospitals,* 365 N.W.2d 499, 504 (N.D.1985) (quoting Wright & Miller, *Federal Practice and Procedure: Civil* § *2050,* pp. 325–26 (1970)). *See* Rule 11.5, N.D.R.O.C. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Dakota Bank & Trust Co. of Fargo v. Brakke,* 377 N.W.2d 553, 555 (N.D.1985).

■ Before an aggrieved party can challenge the propriety of a discovery sanction which excludes evidence, the party must have made an offer of proof, demonstrating prejudice from the court's refusal to allow the evidence. *Wagner v. Peterson,* 430 N.W.2d 331, 332 (N.D.1988); Rule 103(a)(2), N.D.R.Ev. Here, Emery made no offer of proof as to the facts Coons would testify to, or how Coons' testimony would be different from the other two expert defense witnesses. Emery did, however, say Coons was an engineer, and at the first trial Dewitz had argued to the jury his expert was an engineer, and Emery's were not.

The record does not support finding the trial court abused its discretion in excluding Coons' testimony. Trial judges are given wide discretion to determine appropriate

sanctions. Although exclusion of a witness is a drastic measure, we cannot say it was unwarranted in this case. The court acted reasonably in concluding the disclosure was not "seasonable," and in concluding the disclosure was not complete.

Emery's case was not clearly and materially prejudiced by the court's exclusion of Coons. Emery was able to present two expert witnesses to the jury. We are not convinced the outcome of the trial would have been different if Emery had introduced the same expert testimony through Coons.

V

Emery contends the trial court erred in not reducing the jury award for "collateral source payments" under N.D.C.C. § 32–03.2–06.

N.D.C.C. § 32–03.2–06, provides:

*"Reduction for collateral source payments.* After an award of economic damages, the party responsible for the payment thereof is entitled to and may apply to the court for a reduction of the economic damages to the extent that the economic losses presented to the trier of fact are covered by payment from a collateral source. A 'collateral source' payment is any sum from any other source paid or to be paid to cover an economic loss which need not be repaid by the party recovering economic damages, but does not include life insurance, other death or retirement benefits, or any insurance or benefit purchased by the party recovering economic damages."

▮▮▮▮▮ Emery's first two claims concern benefits received by the Dewitz family through their health insurance contract with Blue Cross Blue Shield. Emery argues the jury award should be reduced by $54,076.29, the amount paid to Dewitz and his parents by Blue Cross Blue Shield. Emery contends the exception in the statute for insurance benefits purchased "by the party recovering economic damages" does not apply because Dewitz did not pay for the insurance. In the alternative, Emery claims the jury verdict should be reduced by $4,842.15, to take into account the "service benefit" agreement Blue Cross Blue Shield has with the Dewitzes'

health care providers. Under the agreement, the health care providers agree to charge Blue Cross Blue Shield a reduced amount for services performed for persons covered under a Blue Cross policy.

The legislative history of N.D.C.C. § 32–03.2–06 indicates the personal insurance exception was included in the statute to encourage people to secure personal insurance. *See* House Judiciary Committee, *Report of Tort Reform Subcommittee,* HB 1571, February 16, 1987, p. 3. Based on this legislative history, we conclude the personal insurance exception in N.D.C.C. § 32–03.2–06 includes insurance purchased for a minor by a parent.

Richard and Lynn Dewitz were responsible for providing medical care to their son during his minority. Additionally, because of their son's minority, Richard and Lynn Dewitz were named parties in this lawsuit. Because we believe the legislature did not intend to penalize parents for buying health insurance for their children, to benefit negligent defendants, we hold the Dewitzes' insurance contract with Blue Cross Blue Shield falls within the personal insurance exception of N.D.C.C. § 32–03.2–06.

We also conclude, to the extent the Dewitz family benefited from the service benefit agreement between Blue Cross Blue Shield and health care providers, the benefit is traceable to Dewitzes' insurance policy. Therefore, the benefit is properly included in the personal insurance exception of § 32–03.2–06.

▮▮▮▮ Finally, Emery contends the jury award should be reduced by $1,500, the amount given to Dewitz, and his parents, by the Aid Association for Lutherans. Because the money received from the Aid Association for Lutherans was given as a gift, we hold it is not included in the statutory definition of "collateral source payment."

Prior to the passage of § 32–03.2–06, North Dakota followed the common law rule on collateral source payments. Under the common law rule, a negligent defendant was held responsible for the plaintiff's damages and could not take advantage of the fact the injured party received assistance or compensation from independent sources. *Ostmo v.*

*Tennyson,* 70 N.D. 558, 565, 296 N.W. 541, 545 (1941); *Nelson v. Trinity Medical Center,* 419 N.W.2d 886, 893 (N.D.1988). Under this rule, gifts, such as the money received by the Dewitzes from the Aid Association for Lutherans, were treated no differently than other collateral source payments. *See Ostmo* 70 N.D. at 565, 296 N.W. at 543; *Van Waters & Rogers, Inc., v. Keelan,* 840 P.2d 1070, 1075 (Colo.1992). We believe the legislature did not change the common law rule as to charitable gifts when it passed N.D.C.C. § 32–03.2–06.

The legislative history of N.D.C.C. § 32–03.2–06 indicates the legislature's intent, as part of tort reform, was to change the collateral source rule to eliminate double recovery from sources such as Workers Compensation and Social Security. *See* House Judiciary Committee, *Report of Tort Reform Subcommittee,* HB 1571, February 10, 1987, p. 4. The legislative history does not mention charitable gifts.

We hold, for the purposes of N.D.C.C. § 32–03.2–06, a charitable gift is not a sum "paid or to be paid to cover an economic loss." Unlike insurance proceeds which are paid on account of a legal obligation triggered by economic loss, charitable gifts are given out of love and a sense of community. We conclude the legislature did not intend to treat charitable gifts as a "collateral source." Such gifts are intended to compensate families for expenses which have not and cannot be paid from any other source.

The judgment of the trial court is affirmed.

VANDE WALLE, C.J., and SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.