Filed 3/15/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 54

Allen Perius, Plaintiff and Appellant

v.

Nodak Mutual Insurance

Company and Jacob Kessler, Defendants

Nodak Mutual Insurance Company,        Appellee

No. 20110205

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Bruce B. Haskell, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Scott A. Hager, 1715 Burnt Boat Dr., Madison Ste., Bismarck, ND 58503, for plaintiff and appellant.

Mitchell D. Armstrong, P.O. Box 460, Bismarck, ND 58502-0460, for appellee.

Perius v. Nodak Mutual Ins. Co.

No. 20110205

VandeWalle, Chief Justice.

[¶1] Allen Perius appealed from a district court judgment following a jury verdict in favor of Nodak Mutual Insurance Company.  We affirm.

I.

[¶2] On October 8, 2004, Perius was involved in a motor vehicle accident with an uninsured driver, Jacob Kessler.  Perius insured his vehicle with Nodak for basic no-

fault benefits and uninsured motorist benefits.  Perius claimed he injured his neck in the accident and sought medical treatment.  Perius consulted with Dr. Ron Tello and was prescribed physical therapy.  Perius completed physical therapy in November 2004.  Nodak paid Perius $1,020.75 in no-fault benefits as a result of the accident.  Perius did not seek further medical treatment until March 2005, when he saw a chiropractor.  Perius submitted the bills to Nodak for payment as no-fault benefits.  After Perius submitted to an independent medical examination, Nodak denied him payment for any medical treatment after December 31, 2004, concluding such treatment was unrelated to the accident.  

[¶3] In 2007, Perius brought suit against Kessler, alleging he negligently operated his motor vehicle and caused Perius’s injuries.  Perius also sued Nodak, alleging the company breached its insurance contract with him.  Nodak denied liability and claimed Perius’s alleged injuries were the result of a pre-existing condition.  Nodak also asserted a cross-claim against Kessler regarding Perius’s uninsured motorist claim.  Kessler did not answer the claims against him.  In January 2008, Perius responded to Nodak’s interrogatories, which included disclosure of ten possible expert witnesses, the subject matter and substance of expected expert testimony, and the grounds for the experts’ opinions. 

[¶4] In June 2009, Nodak moved for summary judgment, asserting Perius’s medical treatment after December 31, 2004, was due to a pre-existing condition and no competent, admissible evidence established his claimed injuries were caused by the accident.  Nodak also asserted Perius did not sufficiently disclose his expert witnesses under N.D.R.Civ.P. 26.  Perius resisted the motion, and submitted the affidavits of two of his treatment providers, Dr. Michael Quast, a pain management physician, and Dr. Kelly Remillard, a chiropractor.  Both providers stated their belief that Perius’s injuries and treatment were due to the accident.  Perius also sent Nodak an amended response to its interrogatories.  The district court granted Nodak’s motion for summary judgment, and this Court reversed and remanded, finding disputed issues of material fact existed.  
Perius v. Nodak Mutual Ins. Co.
, 2010 ND 80, ¶¶ 31-32, 782 N.W.2d 355.

[¶5] On remand, a jury trial was set for April 2011.  On March 15, 2011, the district court issued a final pretrial conference order requiring counsel for each party to provide the other with a list of all prospective witnesses, the order in which the witnesses were expected to be called, and a brief description of their expected testimony. Shortly after, Perius sent Nodak amended responses to Nodak’s interrogatories.  Prior to trial, Nodak was informed of Perius’s intent to call Dr. Bryon Blowers, a chiropractor, as an expert witness.  Nodak filed a motion in limine seeking to exclude Dr. Blowers as an expert witness, alleging Dr. Blowers was not properly disclosed under N.D.R.Civ.P. 26.  The district court granted Nodak’s motion, but ordered Dr. Blowers would still be allowed to testify as a fact witness.  At the final pretrial conference, Perius moved to be allowed to present the total amount of his medical bills instead of the amount paid by Blue Cross/Blue Shield.  The district court denied Perius’s motion because it believed requiring Nodak to pay the reasonable value of services rendered would result in a windfall to Perius.  A jury trial was held on April 19-20, 2011, and the jury returned a verdict in Nodak’s favor. 

II.

[¶6] Before challenging the propriety of a discovery sanction excluding evidence, “the party must have made an offer of proof, demonstrating prejudice from the court’s refusal to allow the evidence.”  
Dewitz v. Emery
, 508 N.W.2d 334, 339 (N.D. 1993).  Perius made such an offer of proof at trial, outlining Dr. Blowers’s anticipated expert testimony.  At trial, Dr. Blowers testified about his treatment of Perius, and the medical records related to Dr. Blowers’s treatment of Perius were received into evidence. 

[¶7] Perius argues the district court erred by granting Nodak’s motion to exclude the expert testimony of Dr. Blowers and by excluding evidence of the entire amount of his medical bills.  Therefore, he requests a new trial.  

[¶8] This Court reviews a district court’s decision on sanctions for discovery violations under the abuse-of-discretion standard.  
Wolf v. Estate of Seright
, 1997 ND 240, ¶ 17, 573 N.W.2d 161.  “A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law.”  
Thompson v. Schmitz
, 2011 ND 70, ¶ 18, 795 N.W.2d 913 (quoting 
Brandt v. Somerville
, 2005 ND 35, ¶ 23, 692 N.W.2d 144). 

[¶9] Perius asserts he complied with N.D.R.Civ.P. 26 in disclosing Dr. Blowers as an expert witness, and he was prejudiced by the exclusion of his testimony.  Rule 26(b), N.D.R.Civ.P., provides in part:

(4) 
Trial preparation — Experts.

(A) Expert Who May Testify.  Discovery of facts known and opinions held by experts, otherwise discoverable under Rule 26(b)(1) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(I) a party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial; to state the subject matter on which the expert is expected to testify; and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion[.]

“Parties must fully, completely, and fairly disclose the subject matter on which their expert witnesses will testify at trial and the substance of their expert witnesses’ testimony.”  
Wolf
, 1997 ND 240, ¶ 17, 573 N.W.2d 161 (citing N.D.R.Civ.P. 26(e)(1)(B)).  The purpose of this disclosure requirement is to allow the opposing party a fair opportunity to meet the evidence and eliminate surprise at trial.  
Kjonaas v. Kjonaas
, 1999 ND 50, ¶ 16, 590 N.W.2d 440. 

[¶10] Rule 26(e), N.D.R.Civ.P., requires a party to supplement or correct its response to an interrogatory “in a timely manner if the party learns that in some material respect the response is incomplete or incorrect[.]” N.D.R.Civ.P. 26(e)(1)(A).  The rule also requires a party to supplement its response about “the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person’s testimony.”  N.D.R.Civ.P. 26(e)(2)(B).  No sanction is specified under N.D.R.Civ.P. 37 for a party’s failure to sufficiently supplement interrogatories.  
See
 N.D.R.Civ.P. 37; 
Dewitz
, 508 N.W.2d at 339.  Therefore, the district court has discretion to determine an appropriate sanction for a party’s failure to supplement interrogatories and may exclude expert testimony that is beyond the scope of a party’s responses to interrogatories.  
Wolf
, 1997 ND 240, ¶ 17, 573 N.W.2d 161. 

[¶11] In order to determine whether Perius’s disclosure of Dr. Blowers as an expert witness was sufficient under N.D.R.Civ.P. 26, we consider in further detail the discovery history in this case.  Perius provided three sets of responses to Nodak’s interrogatories:  one in January 2008, one in June 2009, and one in March 2011.  Nodak requested Perius provide the name of each person expected to be called as an expert, the subject matter and substance of the expert’s anticipated testimony, and the grounds for the expert’s opinions.  In January 2008, Perius responded by listing ten medical providers and stating the following:

Subject Matter
:

The above-referenced experts may testify in all pertinent areas of medical treatment, injury and care of Plaintiff.  This medical testimony will include but is not limited to the following areas: reasonableness and/or necessity of medical care and associated past and future medical billings as related to this incident, the medical condition and treatment after the date of the incident, the specific injuries which Plaintiff has sustained as a result of this incident, the treatment expected to be necessary for continuing care as a result of injuries sustained in this incident, any permanent impairment or disability, the propriety of any courses of care after this incident, and the likelihood of any future medical conditions or treatments necessary as arising out of the injuries sustained in this incident.  Furthermore, the above experts may testify on any and all opinions provided by defense medical experts in this case.

Substance:

The above-referenced experts are expected to testify that Plaintiff’s past and current medical care has been appropriate, necessary and the direct result of the trip and fall [sic] accident.  Further testimony is expected to include that the medical treatment which Plaintiff has undergone after the incident is directly related to this accident, that Plaintiff has sustained injuries which are permanent and/or on-going in nature and that medical care and treatment will be necessary to maintain Plaintiff’s health in the future.  Further, it is expected that testimony will include the fact that appropriate measures were taken subsequent to the accident in an effort to treat Plaintiff.  It is expected that the testimony will include commentary on differences with defense medical experts. 

Further substance of expected testimony can be found within the medical records of Plaintiff.

Grounds

The grounds for the medical opinions are the past medical records of Plaintiff, the education and experience of the experts, the direct contacts and examinations the experts have had with Plaintiff, and various medical literature.

A stipulated trial management schedule and order was filed on January 2, 2009, and Perius served his identification of experts on May 10, 2009.  The identification simply listed the names of eleven potential experts and stated their “testimony will include information addressing the areas of causation and damages.”  On May 12, 2009, Nodak’s attorney sent a letter to Perius’s counsel, stating Nodak believed the disclosure did not comply with N.D.R.Civ.P. 26, and requested Perius “treat this letter as our attempt to comply with the applicable rule requiring the parties to resolve discovery disputes prior to involving the court.”   

[¶12] On June 9, 2009, Nodak moved for summary judgment, in part arguing Perius failed to comply with N.D.R.Civ.P. 26.  Perius sent an amended response to Nodak’s interrogatories on June 10, 2009.  The amended response listed thirteen potential experts and repeated the language used in the January 2008 response to describe the subject matter and substance of their expected testimony and the grounds for the experts’ opinions.  Also in response to the summary judgment motion, Perius filed affidavits from Dr. Quast and Dr. Remillard in which both providers stated their belief that Perius’s injuries and treatment were a result of the accident. The district court granted Nodak’s motion for summary judgment, basing its decision in part on Perius’s failure to comply with a scheduling order that governed disclosure of expert witnesses.  

[¶13] On appeal, this Court reversed and remanded, concluding a genuine issue of fact existed.  
Perius
, 2010 ND 80, ¶¶ 31-32, 782 N.W.2d 355.  However, our reversal of summary judgment did not suggest Perius’s responses to Nodak’s interrogatories were sufficient under the discovery rules.  In the opinion, we noted, “Dr. Quast’s affidavit was minimal,” and “the record includes 
minimally sufficient facts from one of Perius’s medical providers
 to raise a genuine issue of fact[.]” 
Id.
 at ¶¶ 28, 31 (emphasis added); 
see also
 
id.
 at ¶ 34 (VandeWalle, C.J., concurring specially) (“[W]hile I reluctantly agree the inferences which might be drawn from the affidavits are sufficient to avoid deciding this case on a motion for summary judgment, this procedure is not a model to be emulated.”).  

[¶14] After remand, Perius sent Nodak his amended responses to Nodak’s interrogatories.  Perius again included a list of ten potential expert witnesses and repeated the subject matter and substance of the anticipated testimony and the grounds for the expert opinions that he disclosed in the January 2008 and June 2009 responses.  Under the circumstances in this case, we conclude Perius failed to comply with N.D.R.Civ.P. 26 in disclosing Dr. Blowers as an expert witness.  As highlighted by the case’s procedural history, Perius was aware that his expert disclosures were insufficient, and failed to supplement his responses despite his duty to do so.  
See
 N.D.R.Civ.P. 26(e)(2)(B).  The district court did not abuse its discretion in excluding Dr. Blowers’s expert testimony as a discovery sanction.  
See
 
Wolf
, 1997 ND 240, ¶ 17, 573 N.W.2d 161.  

[¶15] To the extent N.D.R.Civ.P. 37 was an appropriate rule to apply in this case, Perius did not raise N.D.R.Civ.P. 37 on appeal, but rather argued that his expert witness disclosures complied with N.D.R.Civ.P. 26.  Perius also failed to raise N.D.R.Civ.P. 37 with the district court in his response to Nodak’s motion in limine and in his motion for reconsideration.

[¶16] In light of our disposition of Perius’s first issue, it is unnecessary to reach the other issue raised in this appeal.      

III.

[¶17] We affirm the district court judgment.

[¶18] Gerald W. VandeWalle, C.J.

Dale V. Sandstrom

Daniel J. Crothers

Carol Ronning Kapsner

Maring, Justice, concurring specially.

[¶19] I respectfully concur in the majority opinion.  Discovery conflicts have been a problem for the courts and parties to litigation for decades.  The North Dakota and Federal Rules of Civil Procedure have been studied and amended numerous times in an attempt to prevent or ameliorate discovery problems.  Because I do not believe the majority opinion properly analyzes the circumstances particular to this case, and how the parties and the trial court should have dealt with the discovery problem presented, I am compelled to write.

[¶20] This case involves a claim for basic no-fault benefits and uninsured motorist benefits as a result of an automobile accident.  Allen Perius claimed he injured his neck in the accident and his injuries necessitated medical treatment.  He claimed he treated with chiropractors and medical doctors in an effort to resolve his injuries.  In 2007, Perius brought an action against the driver of the automobile he claimed caused his injuries and against Nodak, his own automobile carrier, for breach of its insurance contract with him.  As the majority opinion recites, Nodak served Perius with an interrogatory requesting that he:

Identify by name, address, employer, and field of expertise each and every person whom you expect to call as an expert witness at trial, and state the following:

A. His or her field of expertise;

B. Any subspecialties within his or her field of expertise:

C. The subject matter on which he or she is expected to testify:

D. The substance of the facts and opinions to which he or she is expected to testify;

E. A summary of the grounds for each of the above stated opinions;

F. The title and date of any treatise, book, article, essay, or other writing by the expert relating to the subject matter on which he is expected to testify; and

G. A complete resume of each such expert’s educational and employment background.

[¶21] Perius answered this interrogatory and served his answer on January 16, 2008.  Perius identified Byron J. Blowers, D.C., as an expert expected to be called as a witness at trial.  As noted in the majority opinion, Perius answered that several experts, including Dr. Blowers was to testify as to medical treatment provided to Perius; that the treatment was directly related to the accident; the reasonableness and/or necessity of medical care; the past and future medical billings as related to the accident; the medical condition and treatment after the date of the accident; the specific injuries that Perius sustained from the accident; the permanency of the injuries; the treatment necessary for continuing care as a result of the injuries sustained in the accident; any permanent impairment or disability; the likelihood of any future medical conditions or treatments necessary; and, he would testify concerning any opinions provided by the defense medical experts.  In addition, Perius’s answer to the interrogatory stated that the grounds for the medical opinions were the past medical records of Perius, the education and experience of the doctors, the direct contacts and examinations of Perius, and medical literature.  Perius also provided the medical records of Dr. Blowers’ treatment of Perius to Nodak.  Nodak did not make a motion to compel more complete answers to this interrogatory.

[¶22] Nodak took the deposition of Perius on June 24, 2008, during which Perius was asked about the treatment he received from Dr. Blowers.  In December 2008, Perius and Nodak entered into a stipulation for trial management schedule, which the trial court approved.  This required a disclosure of experts by Perius no later than 120 days prior to trial and set deadlines for motions and depositions of experts.  On May 10, 2009, Perius served an identification of experts again listing Byron J. Blowers, D.C., as an expert.

[¶23] The record reflects, on May 12, 2009, Nodak’s attorney sent a letter to Perius’s attorney indicating that he believed the disclosure of experts was insufficient, and that his letter was an “attempt to comply with the applicable rule requiring the parties to resolve discovery disputes prior to involving the court.”

[¶24] On June 10, 2009, Perius served Nodak with amended responses to its interrogatories and request for production of documents.  However, Perius’s response with regard to his expert witness Dr. Blowers was not any more complete.  Nodak did not make a motion to compel more complete answers to its expert interrogatory. Instead, on June 10, 2009, Nodak moved for summary judgment asserting Perius had no evidence that his injuries were proximately caused by the automobile accident.  Perius resisted the motion with affidavits from two treating doctors.  The trial court granted the motion and Perius appealed.  Our Court reversed and remanded, holding that disputed issues of material fact existed because of the affidavit of Dr. Quast, which stated that Perius’s injuries and treatment were caused by the automobile accident.  
Perius v. Nodak Mutual Ins. Co.
, 2010 ND 80, ¶¶ 28-32, 782 N.W.2d 355.

[¶25] On March 18, 2011, Perius served amended answers to Nodak’s set no. 2 interrogatories and request for production of documents.  This response indicated that Dr. Blowers was an expert witness expected to testify and set forth basically the same information that had been previously provided as to subject matter, grounds, and opinions.  The response only added that “[f]urther substance of expected testimony could be found within the medical records of [Perius].”  Nodak did not make a motion to compel more complete answers to this interrogatory.

[¶26] On April 11, 2011, Nodak moved in limine to exclude the testimony of Dr. Blowers from the trial.  Nodak relied on the trial court’s statements made at the hearing on the motion for summary judgment in June 2009 that Perius had not complied “in a meaningful way with the scheduling order in terms of discovery responses regarding the expert disclosure,” and the court believed the responses were not a “full, complete and fair disclosure of subject matter and the substance of the testimony.”  Nodak requested that the court use its inherent authority to sanction Perius for his previous insufficient disclosure and exclude Dr. Blowers’ testimony.  On April 14, 2011, the trial court granted Nodak’s motion in limine “to the extent Dr. Blowers is to be called as an expert witness.”  The court reasoned:  “The discovery response falls short of informing the defendant as to specifically what Dr. Blowers’ opinions are and the bases for those opinions.  Instead the response is a general statement applicable to all the experts.”  The trial court concluded that Dr. Blowers could testify as a fact witness, “but he may not testify as to his opinions regarding causation, damages, or any other opinions as an expert.”  Perius moved for reconsideration by the trial court. On April 18, 2011, the trial court denied the motion.

[¶27] On April 18, 2011, the trial court also denied Perius’s motion to continue the trial.  The trial court concluded that our Court’s opinion reversing and remanding the summary judgment should have given Perius notice that his discovery responses were not adequate.  At trial, on April 20, 2011, Perius made an offer of proof concerning the testimony of Dr. Blowers.  At the offer of proof, Perius’s attorney stated:  

Dr. Byron Blowers would testify that plaintiff’s past and current medical care has been appropriate, necessary, and the direct result of the October 8, 2004 motor vehicle accident.  Dr. Blowers would testify to that to a reasonable degree of medical certainty.  Dr. Blowers would testify that the forces from the impact of the motor vehicles caused a significant injury for Allen Perius.  Dr. Blowers’ testimony would include the medical treatment that plaintiff has undergone after the incident, including treatment of Dr. Quast, Dr. Remillard, and Dr. Wagner was directly related to this motor vehicle accident.  That the plaintiff Allen Perius has sustained injuries which are permanent and ongoing in nature and that the medical care and treatment will be necessary to maintain plaintiffs’ [sic] health in the future.  Dr. Blowers would further testify that his opinion differs with that of the defendant’s expert, Dr. Thomas Raih, with respect to the cause of his current pain and medical treatment.  Disagreeing with their opinion that it’s due to degenerative condition and Dr. Blowers would testify that, in his opinion, it would be related to the care and treatment that he’s receiving relating to the motor vehicle accident of October 8th of 2004.  Dr. Blowers would indicate that he’s basing his opinion and testimony on his past review of the medical records of the plaintiff that he has reviewed, his education and experience as a treating licensed chiropractor, the direct chiropractic treatment and examination that Dr. Blowers has had with plaintiff, and various literature supporting his opinion.

[¶28] The history of the discovery in this case is painstakingly outlined to underscore its significance.  I agree that the answers provided by Perius to the expert witness interrogatory were neither complete nor specific to Dr. Blowers’ testimony.  However, I am of the opinion that Nodak was not completely blameless, because it never made a motion to compel more complete answers to its expert interrogatory in the over three years this matter was pending.

Rule 37

[¶29] I disagree with the majority opinion’s reliance on Rule 26(e), N.D.R.Civ.P., which requires a party to supplement or correct its response to an interrogatory.  I am of the opinion that the more appropriate approach to this discovery failing and the proper remedy is found under Rule 37(a)(3)(A)(iii) and (a)(4), N.D.R.Civ.P.

[¶30] Rule 37, N.D.R.Civ.P., is patterned after Rule 37 of the Federal Rules of Civil Procedure.  Rule 37, Fed.R.Civ.P., “establishes the mechanisms by which Rules 26 to 36 can be made effective.”  8B Charles Alan Wright et al., 
Federal Practice and Procedure
 § 2281, at 410 (3d ed. 2010).  The general scheme of Rule 37, Fed.R.Civ.P., is that “ordinarily sanctions can be applied only for a failure to comply with an order of the court.”  
Id.
 at § 2282, at 416.  “While Fed.R.Civ.P. 37(b) requires that a court order must be in effect, and then violated, as a prerequisite for the imposition of sanctions thereunder, no such requirement exists under Rule 26(e).”  
Id.
   at 417 n.1 (quoting 
Thibeault v. Square D Co.
, 960 F.2d 239, 245 (1st Cir. 1992)).  When Rule 26(e), Fed.R.Civ.P., is flouted, the court possesses the power to impose a sanction without first issuing an admonitory order.   
Id.
; 
see
 Fed.R.Civ.P. 37(c)(1); N.D.R.Civ.P. 37; 
Dewitz by Nuestel v. Emery
, 508 N.W.2d 334, 339 (N.D. 1993).  However, under Rule 37(a)(4), Fed.R.Civ.P., a party must first obtain an order to compel an answer that is not evasive or incomplete and it is only a violation of that order that is punishable under Rule 37(b)(2).   
See
 Wright, 
supra
, at § 2282, at 419 n.3 (citing 
Chrysler Corp. v. Carey
, 186 F.3d 1016 (8th cir. 1999)).

[¶31] In the present case, the discovery history points out that Dr. Blowers was identified as an expert witness in January 2008 in Perius’s first response to Nodak’s interrogatory together with the subject matter, substance, and grounds for his opinions and testimony.  The response concerning the subject matter, substance, and grounds however was conclusory and not specific and was therefore “evasive” and “incomplete.”  
See
 N.D.R.Civ.P. 37.  Perius provided the very same response on two more occasions to Nodak.  This is not a case where the expert witness was not identified until right before trial or the general substance of the expert’s testimony was never revealed.  There was no secret that Dr. Blowers was a chiropractor who had treated Perius for the injuries he claimed he sustained in the automobile accident.  Yet, Nodak did not use Rule 37, N.D.R.Civ.P., the purpose of which is to resolve discovery disputes and to require from Perius more complete answers.  Under Rule 37(a)(4), “an evasive or incomplete answer or response must be treated as a failure to answer or respond.”  Under Rule 37(a)(3)(A)(iii), a party may move for an order compelling discovery if a party fails to answer an interrogatory submitted under Rule 33.

[¶32] Under Rule 37(b)(2)(A)(ii), N.D.R.Civ.P, if a court orders a party to provide discovery and the party fails to obey the order to provide discovery the court may issue “further just orders” including prohibiting the disobedient party from introducing designated matters in evidence.  The procedure under Rule 37 provides the offending party with notice that the answer is considered “evasive” and “incomplete” and provides an opportunity for the party to correct the deficiency before facing a sanction.  I am of the opinion that Perius’s answer to the expert interrogatory should have been considered “evasive” or “incomplete” and governed by Rule 37.

[¶33] If a party, rightly or wrongly, believes that it has provided a complete answer to the interrogatory, then there is no reason to supplement the answer under Rule 26(e), N.D.R.Civ.P., because the answer has been properly provided in that party’s opinion.

Inherent Power

[¶34] The exclusion of testimony of an expert witness is a harsh and severe sanction.  In the present case, the court used its inherent authority to sanction Perius for what it perceived was a discovery abuse.  Our Court has recognized a trial court’s ability to use its inherent authority to sanction a party.  
See
 
Benedict v. St. Luke’s Hospitals
, 365 N.W.2d 499, 504 (N.D. 1985) (holding that there has been a reluctance to use inherent power as the basis of sanctions, and it would have been desirable to tie Rule 37 directly to the situation, but finding no abuse of discretion for sanctioning the failure to timely supplement answers to interrogatories); 
Dewitz by Nuestel
, 508 N.W.2d at 339 (holding that first time disclosure of expert and his opinions was untimely and court did not abuse its discretion when it excluded expert at trial under its inherent authority to sanction); 
Bachmeier v. Wallwork Truck Ctrs.
, 507 N.W.2d 527, 533 (N.D. 1993) (holding that granting of summary judgment under inherent power to sanction was an abuse of discretion under the facts); 
Bachmeier v. Wallwork Truck Ctrs.
, 544 N.W.2d 122, 127 (N.D. 1996) (holding that granting of summary judgment under inherent power to sanction because of destruction of key evidence was not an abuse of discretion).  However, legal scholars have pointed out that “[w]hen an appropriate sanction for a specific abuse exists under the Rules, a court may not resort to its inherent sanctioning power but must use the sanctions available under the Rules.”  6 James Wm. Moore et al., 
Moore’s Federal Practice
 ¶ 26.06[2] (3d ed. 2011); 8B Charles Alan Wright et al., 
Federal Practice and Procedure
 § 2282, at 422 (3d ed. 2010) (noting that the United States Supreme Court in 
Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers
, 357 U.S. 197, 207 (1958), made it clear that it is ordinarily inappropriate to look beyond the clearly delineated procedures of Rule 37 for the imposition of sanctions in the discovery context).  The Court of Appeals for the Second Circuit requires “a finding of bad faith for the imposition of sanctions under the inherent power doctrine.  That bad faith must be shown by (1) ‘clear evidence’ or (2) ‘harassment or delay or . . . other improper purposes.’”  
DLC Management Corp. v. Town of Hyde Park
, 163 F.3d 124, 136 (2d Cir. 1998) (citations omitted).  The Court of Appeals noted:  “Because of the potency of the court’s inherent power, courts must take pains to exercise restraint and discretion when wielding it.”  
Id.
  Our Court has stated that the imposition of inherent power sanctions requires case-by-case analysis of all the circumstances presented in the case, similar to Rule 37 sanctions:

Valid considerations include, but are not limited to:  the culpability, or state of mind, of the party against whom sanctions are being imposed; a finding of prejudice against the moving party, and the degree of this prejudice, including the impact it has on presenting or defending the case; and, the availability of less severe alternative sanctions.

Bachmeier
, 507 N.W.2d at 534 (footnote omitted); 
Bachmeier
, 544 N.W.2d at 124-25.

[¶35] Although Perius did not raise below Rule 37 or the trial court’s use of its inherent power, I do not believe it is unreasonable to require a trial court to apply the correct rules or legal analysis when considering sanctioning a party.  The inherent power of a court to sanction a party is grounded in its inherent power to manage its own affairs.  For a court to act under its inherent powers, it should at least first make the findings listed above.  Clearly, the better practice is to use the inherent power doctrine sparingly and only when the Rules of Civil Procedure do not provide for a sanction for the discovery abuse.  In this case, there was a procedure for obtaining sanctions under Rule 37, and it should have been utilized.

Sanction

[¶36] Our Court has noted that under Rule 37, N.D.R.Civ.P., “sanctions must be tailored to the severity of the misconduct . . . .”  
Bachmeier
, 507 N.W.2d at 533.  “Generally, sanctions exist to further two goals.  First, sanctions exist to penalize those whose conduct is deemed to warrant a sanction; second, they exist to deter others who may be tempted to behave in such a way as to warrant the imposition of a sanction.”  
Id.
  Courts should consider whether exclusion of testimony is appropriate when an alternative, less drastic sanction is available and would be just as effective.  In the present case, Nodak’s motion in limine was served on April 11, 2011, and granted by the trial court on April 14, 2011.  The trial began on April 19, 2011.  There was plenty of time for a discovery deposition by Nodak of Dr. Blowers before trial.  Nodak already had an opposing expert to counter the medical evidence at trial.  We have recognized that exclusion of a witness is a “drastic measure,” 
Dewitz by Nuestel
, 508 N.W.2d at 340, and that the preferred remedy for late disclosure is generally a continuance rather than exclusion of expert testimony, 
Clark v. Clark
, 2006 ND 182, ¶ 10, 721 N.W.2d 6.  A discovery deposition is another remedy with the costs borne by the offending party.

Treating Physicians as Experts

[¶37] I also point out that there has been a dispute over whether treating physicians are fact witnesses or retained expert witnesses.  
See
 Katherine A. Rocco, Note, 
Rule 26(A)(2)(B) of the Federal Rules of Civil Procedure: In the Interest of Full Disclosure?
,” 76 Fordham L. Rev. 2227 (2008); Christopher W. Dyer, Note, 
Treating Physicians: Fact Witnesses or Retained Expert Witnesses in Disguise?  Finding a Place for Treating Physician Opinions in the Iowa Discovery Rules
, 48 Drake L. Rev. 719 (2000).  Under the 1993 amendments to Rule 26(a), Fed.R.Civ.P., a duty to disclose was imposed on parties to identify expert witnesses and provide a detailed written statement of the testimony that may be offered at trial.  This requirement for written reports was limited to experts retained.  Rule 26(a)(2), Fed.R.Civ.P.  Treating physicians have not been held subject to the written report requirement by the majority of federal courts considering the issue.  Dyer, 
supra
, at 728.  In support, Dyer states:

“Treating physicians are not retained for purposes of trial. Their testimony is based upon their personal knowledge of the treatment of the patient and not information acquired from outside sources for the purpose of giving an opinion in anticipation of trial. They are witnesses testifying to the facts of their examination, diagnosis, and treatment of the patient. It does not mean that the treating physicians do not have an opinion based upon their examination of the patient or to the degree of injury in the future. These opinions are a necessary part of the treatment of the patient.”

Id.
 at 729 (quoting 
Baker v. Taco Bell Corp
.,163 F.R.D. 348, 349 (D. Colo. 1995)).  The advisory committee notes to Federal Rule of Civil Procedure 26(b)(4)(A) state that the requirement of a written report applies to only those experts retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. The advisory committee in deciding exemption of treating physicians from the report requirement stated:  “A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.” Fed.R.Civ.P. 26(b)(4)(A), Advisory Committee’s Note.  The Advisory Committee’s Note further explains that, in 2010, Rule 26(a)(2)(C) was: 

[A]dded to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions.  This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B).  Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.

[¶38] I recognize that North Dakota has not adopted these amendments to Rule 26, N.D.R.Civ.P., but I believe the discussion concerning retained experts and experts such as treating physicians is applicable to a trial court’s consideration of sanctions for the failure to provide more specific information concerning opinions and the grounds therefor from nonretained experts such as treating physicians.  I am not suggesting that a treating physician cannot be both a fact witness and provide expert testimony that would fall under Rules 702, 703, or 705 of the Rules of Evidence.  I am suggesting that there are considerations that weigh against requiring excessive detail in answers to interrogatories when the treating physician can be deposed by the opposing party.  Treating physicians often feel that involvement in litigation takes time away from treatment and patient care.  Rule 26(a)(2)(C), Fed.R.Civ.P., does not burden the treating physician with the detail required in a written report.  It, instead, requires “the subject matter” on which the expert is expected to present evidence, and “a summary of the facts and opinions” to which the expert is expected to testify.  Fed.R.Civ.P. 26(a)(2)(C). 

[¶39] In conclusion, I am of the opinion that a court’s inherent power to sanction for a discovery violation should be exercised with a great deal of restraint, and that if a sanction is available under Rule 37, N.D.R.Civ.P., the rule should govern both procedurally and substantively.  Under Rule 37(a)(4), N.D.R.Civ.P., an evasive or incomplete answer is to be treated as a failure to answer.  The proper remedy for incomplete answers to interrogatories is a motion to compel.  Rule 37(a)(4), N.D.R.Civ.P., expressly confers power on the court to order further answers.  If a party fails to obey the order of the court, a motion for sanctions under Rule 37(b)(2),N.D.R.Civ.P, is appropriate.

[¶40] Although the trial court used the wrong analysis and the majority opinion continues that error, I concur specially because the record indicates that at trial Perius was able to get into evidence through Dr. Blowers’ testimony how Perius was injured in the automobile accident and his treatment of Perius’s injuries.  Perius was also able to have Dr. Quast testify to causation and damages.  Therefore, any error on the part of the trial court was harmless error in my opinion.

[¶41] I, therefore, concur specially.

[¶42] Mary Muehlen Maring